**STERLING HOMES CO., Inc., v. STAMFORD WATER CO.**

**No. 17.**

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1935.

608

Ransom H. Gillett, of Albany, N. Y., for appellant.

Morris Orenstein, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff, Sterling Homes Company, Inc., is a New York corporation which in 1926 was engaged in a real estate development of land situated in Connecticut. Desiring to obtain water service for prospective purchasers of its lots, it entered into a contract with the defendant, a private corporation of Connecticut, by which it was agreed between the parties that some 3,925 feet of water main should be laid on certain streets within the subdivision at the plaintiff's expense, and that, when the water rates derived by the defendant "from the takers of water from said main" should amount for three consecutive years to 10 per cent. annually upon the cost of said main, the defendant would repay such cost to the plaintiff. The cost was $10,066.78. Alleging that the condition which entitled it to repayment of this sum had been performed, the plaintiff brought this action. After the defendant had answered, a motion was made for summary judgment under section 476 of the New York Civil Practice Act and Rules 113 and 114 of the Rules of Civil Practice. The mo-

tion was granted, and this is an appeal by the defendant from the judgment entered for the plaintiff in the sum of $10,066.78, with interest from December 1, 1932.

Before passing to the merits of the dispute, a question of venue must be considered. The plaintiff brought its action in the District Court for the Northern District of New York, alleging that its principal office is located in the city of Albany, which is within that district. By its answer the defendant challenged the venue of the action, asserting that neither the plaintiff nor the defendant is an inhabitant or resident of the Northern district. It alleged that the plaintiff's principal office is and always has been within the Southern district of New York, and that its attempt to change the location of its principal office to Albany by a certificate filed with the secretary of state of New York on September 1, 1934, was solely for the purpose of bringing this action and was ineffectual; that the action should have been brought in the Southern district of New York or in the district of Connecticut. The defendant contends that it was entitled to a trial of the issue thus raised by its answer. But the questions attempted to be presented relate only to venue, not to jurisdiction. When a case is within the general jurisdiction of the court by virtue of diverse citizenship, a defect in venue will be waived if the defendant enters a general appearance. Lee v. Chesapeake & Ohio R. Co., 260 U. S. 653, 655, 43 S. Ct. 230, 67 L. Ed. 443. Such a waiver occurred in the present case. On September 20, 1934, the defendant served a general notice of appearance. That on the same day it obtained from the plaintiff a stipulation extending the time "to answer or otherwise move with respect to the complaint" in no wise detracts from the effect of its general appearance. Its privilege of attacking the venue of the action was thereby waived.

The merits of the dispute involve an interpretation of the contract sued on and require a further statement of the admitted facts. The water main laid pursuant to the contract (for convenience referred to hereafter as the contract main) was completed and paid for in 1926. Thereafter in 1928 and 1929 the defendant constructed at its own cost extensions and additions to the contract main in order to serve purchasers of lots in the plaintiff's subdivision which were located beyond the

contract main. One of such purchasers was an ice company which owned a lot within the subdivision and also operated an artificial ice plant located outside the subdivision. At the ice company's request an extension which served its lot was extended further to its ice plant. During the years 1930, 1931, and 1932, the defendant served (1) the ice company's artificial ice plant, (2) owners of lots within the subdivision who tapped the extensions and additions laid by the defendant, and (3) owners of lots who tapped directly the contract main. If all three groups are to be considered "takers of water from said main" within the meaning of the contract, the water rates paid by them in each of said years were more than 10 per cent. of the cost of the contract main and the plaintiff is entitled to repayment of such cost. This is its contention. The defendant, on the other hand, contends that the quoted phrase refers only to lot owners who tapped directly the contract main. The annual rates paid by them were concededly much less than the required 10 per cent. of its cost.

■ Thus the dispute is narrowed to a question of the true construction of a written contract, which is a matter for the court. Although the answer denied the allegation of the complaint that all conditions precedent to the defendant's duty to pay had been performed, the admitted facts show that such denial was based on the plaintiff's assumption of the meaning of the contract. No issue of fact remained for submission to the jury. Nor do the defendant's opposing affidavits suggest the existence of any fact which might be proved to aid the court in interpreting the written contract. Hence the controversy was capable of determination upon the pleadings and the summary judgment was correct, unless the contract was improperly construed.

■ There is nothing in the contract which necessarily limits the words "takers of water from said main" to persons who tap it directly. Literally the words include as well persons who take water from the contract main by tapping extensions thereto. Since the contract main reached only part of the lots in the subdivision, it would seem that it must have been within the contemplation of the parties that extensions would some time be required to reach the other lots; hence the silence of

the contract with respect to extensions can scarcely justify an inference that the parties had in mind only direct tappers to the contract main. Moreover, it is obvious that only because of the plaintiff's investment in the contract main is the defendant able to derive revenue from its own investment in the extensions. It is not unreasonable therefore to give the plaintiff credit for it. In an ideally fair contract such revenue should perhaps be apportioned and only part thereof be attributed to the contract main; but, the parties having said nothing of apportionment, the courts may not rewrite the contract in order to make it conform more nearly to conceptions of ideal fairness. Even the revenue derived from direct tappers to the contract main is not solely the product of the plaintiff's investment therein, for the contract main itself delivers water only because it is connected to the supply line previously laid by the defendant. Neither in the words of the contract nor in the circumstances of the parties when the contract was made, so far as the record discloses them, do we find anything to limit "takers of water from said main" to those who tap it directly. We think that tappers to the extensions are likewise included.

Accordingly, the judgment is affirmed.