NATIONAL UTILITY SERVICE, INC.,
Plaintiff-Appellant,

v.

WHIRLPOOL CORPORATION,
Defendant-Appellee.

No. 108, Docket 28343.

United States Court of Appeals
Second Circuit.

Argued Oct. 28, 1963.

Decided Dec. 24, 1963.

Manes, Sturim & Laufer, New York City, for appellant. Arthur M. Laufer, New York City, on the brief.

Burton Y. Weitzenfeld, Chicago, Ill., Julian S. Perlman, New York City, and Robert A. Coe, Chicago, Ill., for appellees. Liebman, Eulau & Robinson, New York City, on the brief.

Before SWAN, CLARK and MARSHALL, Circuit Judges.

SWAN, Circuit Judge:

This is an action for breach of contract. It was brought in the Supreme Court of the State of New York and was

thereafter removed to the federal court on the ground of diverse citizenship. The case was tried before Judge Kilkenny and a jury but never reached the jury because the judge granted defendant's motion to direct a verdict in its favor. Judgment was entered May 9, 1963 dismissing the complaint with prejudice.[2]

Plaintiff's business is advising industrial concerns how to reduce the rates charged them by public utility companies. On April 16, 1954 plaintiff and defendant entered into a contract relating to defendant's manufacturing plants, including those at St. Joseph, Michigan (count 1) and Evansville, Indiana (count 2). Plaintiff agreed to make a complete technical investigation and analysis of the various factors in connection with defendant's public utility rates and defendant agreed to pay as compensation a retainer of $500 (paid forthwith) plus 50% of all savings obtained through rate reductions obtained by plaintiff for a period of sixty months from the date each such reduction appears on defendant's bills. Any recommendation made by plaintiff was subject to defendant's approval, and it was to pay "only for savings which actually become effective on our bills." There was a further provision that "In event a reduction is still pending at the expiration of this agreement then our liability to you is automatically extended until same is completed and we will pay you as outlined above." On the reverse side of the agreement was a typewritten addition: "At our St. Joseph, Michigan plant we are in the process now of increasing our power factor from 88% to 100% and reductions in our gas rates for processing and heating, therefore, these items are not to be included in your computations of rate reductions."

There are many factors which make up public utility rates for electricity. One of them is the power factor. When the power factor is one hundred per cent, maximum efficiency is achieved.

The face of the contract between the parties obligated National to "make a complete technical investigation and analysis of the various factors" in connection with defendant's rates. The typewritten addition on the reverse side provided that at Whirlpool's St. Joseph plant reductions in power factor "are not to be included in your computations of rate reductions." To put it another way, plaintiff's compensation was to be the $500 retainer and fifty per cent of all savings resulting from rate reductions, except those flowing from power factor correction at the Michigan plant.

■ The contract was unambiguous and both parties understood that National was to investigate and make recommendations as to the power factor at the Michigan plant.[3] By letter of May 28, 1956 (Exhibit 2) plaintiff recommended the purchase of capacitors to increase the power factor. On July 19, 1957 Whirlpool wrote Mr. Goldman, vice president of National, to inquire whether payment of compensation would be expected before Whirlpool had fully recovered its cost of installation of capacitors and its expenses of additional changes (which might affect the power factor) expected to be made. By letter of July 23, 1957, Mr. Goldman consented to this (Exhibit 17). But on Septmber 19, 1957, Whirlpool wrote National that the typed insertion precluded National from including in its computation of rate reductions any savings resulting from increase in the power factor at the St. Joseph plant. The contract between the parties expired on April 16, 1959, before Whirlpool installed the recommended capacitors. Thereafter they were installed, and the present action seeks to recover fifty per cent of

2. Except as to a claim, if any, for the reasonable value of services rendered by plaintiff in connection with count 1 of the complaint.

3. In the proposed pretrial stipulation, plaintiff urged the court to decide as a matter of law "what is the legal effect of the words inserted on the back of the contract." Plaintiff's precise language was made a part of the court's pretrial order. Record 710. Hence plaintiff cannot now successfully contend that the typed insertion is ambiguous.

the resultant savings, alleged to be $10,-000 a year for five years, on the theory that Whirlpool "waived" the typewritten provision of the contract.

At the conclusion of the evidence the trial judge directed a verdict for the defendant. Appellant contends that in so doing the court usurped the functions of the jury. We hold the direction was correct.

█ The construction of a contract is for the court when its terms are unambiguous and there are no extrinsic facts to affect its construction. Seaboldt v. Pennsylvania R. R. Co., 3 Cir., 290 F.2d 296; Copp v. Van Hise, 9 Cir., 119 F.2d 691; Sterling Homes Co., Inc. v. Stamford Water Co., 2 Cir., 79 F.2d 607; Nucci v. Warshaw Const. Co., 12 N.Y.2d 16, 20, 234 N.Y.S.2d 196, 186 N.E.2d 401; Bethlehem Steel Co. v. Turner Construction Co., 2 N.Y.2d 456, 460, 161 N.Y.S.2d 90, 141 N.E.2d 590, 63 A.L.R.2d 1331; New Era Homes Corp. v. Forster, 299 N.Y. 303, 86 N.E.2d 757.[4] The case of Ohio & Mich. Coal Co. v. Clarkson Coal & Dock Co., 6 Cir., 266 F. 189, upon which plaintiff relies, is not in point.

██ The theory of "waiver" upon which appellant now bases its right to recover compensation has no application to this case. A party may waive performance of a condition inserted for his benefit and thereby make unconditional the other party's duty under an agreement, but he cannot by waiver of a condition precedent to his own liability create obligation in himself where none previously existed. To create such an obligation requires a new contract and new consideration. See Corbin on Contracts, Vol. 3A §§ 752 et seq. "One cannot 'waive' himself into a duty to make a gift of money" (at p. 488); Draper v. Oswego Fire Relief Ass'n, 190 N.Y. 12, 82 N.E. 755.

We hold that direction of the verdict in the first cause of action was correct.

█ The second cause of action relates to defendant's plant at Evansville, Indi-ana. Plaintiff recommended that capacitors be installed but defendant advised plaintiff that it had decided not to proceed. The contract provided specifically that any recommendations by plaintiff were subject to defendant's approval. There is no evidence that when the contract terminated on April 16, 1959 any capacitors had been installed. And plaintiff admitted that when suit was filed in June 1960 it did not know whether any capacitors had been installed.

The order granting defendant's motion to direct a verdict in its favor is affirmed.

The foregoing opinion was prepared too late to be submitted to Clark, Circuit Judge. At the conference after argument Clark, Circuit Judge, voted "to reverse and remand."

---

4. It appears, and the parties seem to assume, that the contract was executed in New York and is to be construed according to New York law.