FEDERAL DEPOSIT INSURANCE CORPORATION, PLAINTIFF-RESPONDENT, v. VALENCIA PORK STORE, INC., JAMES MUSILLO AND ANGELO GRECO, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 2, 1988—Decided May 18, 1988.

Before Judges GAULKIN, GRUCCIO and D'ANNUNZIO.

*Robert E. McLeod* argued the cause for appellants (*Ronald S. Gasiorowski*, attorney).

*Robert W. Ruggieri* argued the cause for respondent (*Cassidy, Foss & San Filippo*, attorneys; *Roger J. Foss*, of counsel; *Messrs. Roger J. Foss* and *Robert W. Ruggieri*, on the brief).

PER CURIAM.

Plaintiff Federal Deposit Insurance Corporation (FDIC) brought this action to collect monies allegedly due under three equipment leases between U.S. Funding Corporation (U.S. Funding) as lessor and Valencia Pork Store, Inc. (Valencia) as lessee. The obligations of Valencia were personally guaranteed

by defendants James Musillo and Angelo Greco, Valencia's corporate officers. The interests of U.S. Funding were assigned to the Bank of Bloomfield and then, when the Bank of Bloomfield failed in early 1976, to FDIC.

FDIC's three-count complaint, filed November 18, 1985, described the agreements as follows:

FIRST COUNT: A November 18, 1974 lease with rental payments totalling $13,327.92 at $370.22 per month for 36 months, maturing on November 18, 1977.

· SECOND COUNT: A December 2, 1974 lease with rental payments totalling $55,949.80 at $933.33 per month for 60 months, maturing on November 20, 1979.

THIRD COUNT: A January 29, 1975 lease with rental payments totalling $50,953.80 at $849.23 per month for 60 months, maturing on January 28, 1980.

The complaint alleged "default of payment" under each lease but did not specify any amounts or dates of default.

Based upon the undisputed fact that the last payment on the leases had been made to FDIC on or about August 13, 1977, defendants moved for summary judgment, claiming that the November 18, 1985 complaint was time-barred. In an opinion reported at 212 *N.J.Super.* 335 (Law Div.1986), Judge Selikoff held that (1) the statute of limitations applicable to FDIC contract claims is 28 *U.S.C.A.* § 2415(a), which fixes a six-year limitation (*id.* at 337); (2) the statute "should not run from each default on an installment without manifestation of intent by the lessor that maturity of later installments shall be accelerated" (*id.* at 339); (3) the First Count lease agreement, maturing on November 18, 1977, was accordingly time-barred; but (4) the Second and Third Count agreements, maturing on November 20, 1979 and January 28, 1980, were not time-barred. *Id.*

Following a bench trial as to the Second and Third Counts, Judge Stamelman entered judgment against defendants jointly and severally on the Second Count in the sum of $40,847.16. Apparently finding insufficient proofs in support of the Third Count "allegation of another loan," Judge Stamelman rejected that claim. Defendants appeal. FDIC has not cross-appealed.

Defendants' principal argument is, again, that the Second Count cause of action is time-barred. Defendants urge that (1) the appropriate statute of limitations is *N.J.S.A.* 2A:14–1; (2) FDIC's cause of action "accrue[d] immediately upon the default of payments due" in late 1977, more than six years before the complaint was filed; and (3) the proofs in any event established that the Second Count lease matured more than six years before the filing of the complaint.

We reject the contention that *N.J.S.A.* 2A:14–1 is the applicable statute of limitations. Judge Selikoff was correct in holding that 28 *U.S.C.A.* § 2415(a) applies to this action brought by FDIC founded on contract. *See FDIC v. Petersen,* 565 *F.Supp.* 1007 (D.Colo.1983), aff'd, 770 *F.*2d 141, 142–143 (10th Cir.1985); *FDIC v. Cardona,* 723 *F.*2d 132, 134 (1st Cir.1983); *FDIC v. Hinkson,* 665 *F.Supp.* 356, 357 (D.Del.1987).

We expressly decline, however, to pass upon Judge Selikoff's further holding that the limitation period fixed by 28 *U.S.C.A.* § 2415(a) did not commence until all payments had become due, either upon maturity or acceleration of the lessee's obligations. Federal law is applicable in determining when the federal limitation period begins to run. *See Petersen,* 565 *F.Supp.* at 1009–1010, aff'd, 770 *F.*2d at 142–143; *United States v. Cardinal,* 452 *F.Supp.* 542, 544 (D.Vt.1978). Apparently the question decided by Judge Selikoff as to the running of the statute of limitations on an installment obligation has not been definitively determined as a matter of federal law.[1] *See Petersen,* 770 *F.*2d at 143; *Hinkson,* 665 *F.Supp.* at 359; *Cardinal,* 452 *F.Supp.* at 544. That question need not be addressed here. Even assuming that the limitation period does not begin to run until the obligation has fully matured, the proofs establish that the complaint was filed more than 6 years after the lease obligations had matured.

---

[1] It is unclear from Judge Selikoff's opinion whether he purported to decide the question as a matter of federal or New Jersey law.

FDIC alleged that the Second Count lease was dated December 2, 1974 and matured on November 20, 1979, just two days short of 6 years before the complaint was filed. The document presented by FDIC in support of that obligation, however, was not executed by or on behalf of Valencia or its principals. Musillo and Greco both testified that they had not executed that document. They acknowledged that Valencia had borrowed money from U.S. Funding and had signed an equipment lease as the financing vehicle. But that lease agreement, they asserted, was executed and payments on account of the lease had been made well before December 2, 1974. Although defendants could not produce the document itself, the record supports their account.

FDIC claimed that Valencia had borrowed $40,000, but the only documentary evidence presented at trial established that Valencia had received $35,000 from U.S. Funding. Those monies had been deposited in the Valencia account on November 1, 1974 ($20,000) and November 8, 1974 ($15,000) and concededly had been used to buy the "leased" equipment. Musillo testified without contradiction that all of the equipment had been purchased and installed before the Valencia meat market opened for business on December 2, 1974. It was also undisputed that Valencia made two monthly $840 payments to U.S. Funding by check dated November 6, 1974. Moreover, the personal guarantees of Musillo and Greco relied upon by FDIC were dated September 23 and November 12, 1974; the latter document recites that it is given "to induce U.S. Funding Corporation ... to enter into an Equipment Lease dated November 12, 1974."

The undisputed proofs thus fully corroborate defendants' account that an equipment lease was executed, and payments commenced, before the December 2, 1974 date of the alleged Second Count lease. The proofs also corroborate defendants' explanation of the several subsequent lease documents which came into the possession of the Bank of Bloomfield and then FDIC. Whether U.S. Funding advanced $35,000 or $40,000, Valencia clearly was not obligated, as the complaint alleged, for

a total of $120,231.52 under three leases. Musillo testified that after Valencia had executed a lease and had made its first two $840 payments on November 6, 1974, Arnold Daner, the principal of U.S. Funding, instructed him to make two payments each month, in the sums of $250.97 and $849.23. Sometime later, Daner instructed Musillo to make single monthly payments of $933.33. The documentary proofs confirmed that testimony: payments of $250.97 and $849.23 were made through September 1975 and payments of $933.33, the amount set forth in the purported Second Count lease dated December 2, 1974, did not commence until October 1975.

Musillo and Greco testified that no amendment to the original lease agreement, nor any new agreement, was ever executed. That testimony is confirmed by a memorandum introduced by FDIC describing an FBI investigation which revealed that

Daner stated that James Musillo did sign a legitimate lease with U.S. Funding; however, Daner kept that lease and presented three other fictitious leases and presented them to the bank [of Bloomfield] at various times.[2]

The record thus cannot support any finding that Valencia executed or agreed to the terms of the lease alleged in the Second Count. The proofs, rather, compel the conclusion that Valencia executed a lease prior to November 8, 1974, at which time U.S. Funding had advanced all of the loan proceeds and had received the first two monthly rental payments. Since no one suggests that that lease was for more than the 60 month term alleged in the complaint, Valencia's obligations matured no later than November 8, 1979. The November 18, 1985 filing of the complaint was thus untimely.

---

[2]Although the present record does not describe the investigation with any detail, it does appear that the United States Attorney seized the records of the Bank of Bloomfield and also of Valencia. A criminal indictment was returned, in which Daner was named either as a defendant or an unindicted co-conspirator; neither Valencia nor its principals were so named. Some or all of the indictees were ultimately convicted. The seizure and retention of records by the United States Attorney perhaps explains some of the inadequacies in the proofs here.

The March 13, 1987 judgment in favor of FDIC is reversed. The matter is remanded to the Law Division for the entry of judgment in favor of defendants.