655 A.2d 1379

METROMEDIA COMPANY, A GENERAL PARTNERSHIP, PLAIN-
TIFF–RESPONDENT, v. HARTZ MOUNTAIN ASSOCIATES, A
NEW JERSEY GENERAL PARTNERSHIP, DEFENDANT–AP-
PELLANT.

Argued February 27, 1995—Decided April 11, 1995.

*David J. Hughes* argued the cause for appellant (*Horowitz, Rubino & Patton*, attorneys).

*Richard D. Stanzione* argued the cause for respondent (*Hiering, Dupignac & Stanzione*, attorneys; *Mr. Stanzione* and *Tracy A. Armstrong*, on the brief).

The opinion of the Court was delivered by

O'HERN, J.

This case provides an insight into the management practices of large business enterprises. Plaintiff, Metromedia Company (Metromedia), is a national conglomerate with diversified business interests. Those interests include: computer software development; restaurant franchises; motion picture production and distribution; and the manufacturing of motor vehicle engines and parts. In 1978, Metromedia became a tenant at the Harmon Tower office complex in Secaucus, New Jersey, owned by Hartz Mountain Industries (Hartz), a New Jersey partnership engaged in the development of commercial real estate in that area. The initial rent was $455,336.00 per year.

Dissatisfied with the cleaning services provided by Hartz through the lease, Metromedia negotiated an agreement with Hartz to resolve its concerns. Under that agreement, effective January 1, 1985, Metromedia could hire its own cleaning service and Hartz would "pay the monthly amount of $2,632.00 directly to [Metromedia's cleaning service] upon presentation of bills." The

rent due under the lease was to remain the same and Hartz would, in effect, reimburse Metromedia for cleaning costs.

It appears that the parties did not thoroughly discuss the mechanics for issuing the monthly payments. For six and one-half years, Metromedia paid the bills from its cleaning service but did not submit those bills to Hartz for reimbursement.

In May 1991, an employee of Metromedia realized that Hartz had not reimbursed it for the cleaning services and contacted Hartz' property manager for Harmon Tower regarding the cleaning service-agreement. The Hartz manager initially denied the existence of such an agreement. On June 5, 1991, Metromedia's Vice President and Controller sent a letter to the Hartz manager and amicably inquired, "[D]o you have any suggestion as to how we can best resolve the situation?"

The parties were unable to resolve the matter, and Metromedia filed suit in February 1992. In its answer to Metromedia's complaint, Hartz asserted that any claim for reimbursement for cleaning services arose in 1985 and, therefore, was barred by the six-year statute of limitations. *N.J.S.A.* 2A:14–1. The lower courts disagreed with Hartz. They held that the cause of action did not arise until Hartz refused to pay in May 1991.

On the merits, the trial court found that an agreement to reimburse Metromedia for its expenditures on cleaning services existed. The court's calculations began with January 1, 1985, and with certain adjustments, it allowed recovery for each month thereafter. While adjusting for months in which Metromedia did not occupy all of the space under the lease and months for which Metromedia could not locate any bills, the trial court entered judgment in the amount of $190,481.09. The Appellate Division affirmed with a minor adjustment for a duplicate billing of $2,632.00.

We agree with the trial court's resolution of the factual issues. There was an agreement to credit Metromedia for the cleaning services, and Hartz did not do so from January 1985 until May

1992. We disagree, in part, with the lower court's resolution of the statute-of-limitations issue.

Ordinarily, "[f]or purposes of determining when a cause of action accrues so that the applicable period of limitation commences to run, the relevant question is when did the party seeking to bring the action have an enforceable right." *Andreaggi v. Relis*, 171 *N.J.Super.* 203, 235–36, 408 *A.*2d 455 (Ch.Div.1979). In the unusual circumstances of this case in which the procedure for payment of cleaning services was unclear, it is possible to view the cause of action as not arising until the rejection of the claims presented by Metromedia to Hartz. But the "enforceable right" arose immediately upon completion of the cleaning services. We believe, therefore, that the claims for a monthly credit accrued on a monthly basis commencing January 1, 1985. That is a familiar method for treatment of limitation issues under installment contracts when no acceleration clause is present.

Courts have used the "installment contract" approach in a variety of situations. Coupons on county bonds due annually, periodic payments for promissory notes, periodic payments under a divorce settlement, and monthly payments under an equipment lease have all been considered installment contracts for the purpose of determining accrual of a cause of action. *F.D. Stella Prods. Co. v. Scott*, 875 *S.W.*2d 462, 464–65 (Tex.Ct.App.1994). In an installment contract a new cause of action arises from the date each payment is missed. 4 Arthur L. Corbin, *Corbin on Contracts* § 951 (1951 & Supp.1994). Corbin has explained that absent a repudiation, a plaintiff may sue for each breach only as it occurs, and the statute of limitations begins to run at that time. Corbin, *supra*, § 989. In *Federal Deposit Insurance Corp. v. Valencia Pork Store, Inc.*, 212 *N.J.Super.* 335, 338, 514 *A.*2d 1365 (Law Div.1986) (citing *Masonic Temple Ass'n. v. Kistner*, 11 *N.J.Misc.* 761, 168 *A.* 43 (Sup.Ct.1933)), *rev'd on other grounds*, 225 *N.J.Super.* 110, 541 *A.*2d 1098 (App.Div.1988), Judge Selikoff noted that, "[i]n the case of an obligation payable by installments, the statute of limitations may begin to run against each installment as it falls

due." To hold otherwise would allow a claimant to trigger the statute of limitations upon presentation of a claim rather than having the existence of a claim trigger the statute of limitations.

■ Plaintiff's complaint was filed on February 19, 1992, approximately seven years and one month after its claims began to accrue. Hartz concedes that under an installment theory of accrual, plaintiff is entitled to recover for monthly credits commencing on February 1, 1986 (six years before the suit was filed). That would bar recovery for cleaning services due from January 1, 1985, to February 1, 1986. The result is an adjustment of $34,216.00.

As modified, the judgment of the Appellate Division is affirmed. The amount due to plaintiff under its judgment is $153,633.09.

*For modification and affirmance*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.