

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2006

# Natl Util Ser Inc v. Cambridge-Lee Ind

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2952

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Natl Util Ser Inc v. Cambridge-Lee Ind" (2006). *2006 Decisions.* Paper 425.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/425

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2952

NATIONAL UTILITY SERVICE, INC.

v.

CAMBRIDGE-LEE INDUSTRIES, INC.,
                                        Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 02-cv-3294
(Honorable Faith S. Hochberg)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 11, 2006

Before:  SCIRICA, *Chief Judge*, SLOVITER and BARRY, *Circuit Judges*

(Filed: September 25, 2006 )

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Cambridge-Lee Industries, Inc., appeals the District Court's judgment in favor of

National Utility Service, Inc., in a breach of contract action.  We will affirm.

I.

On May 25, 1994, National Utility contracted with Cambridge-Lee to review Cambridge-Lee's monthly utility bills and recommend cost-saving changes to its services, with National Utility entitled to 50% of savings realized by Cambridge-Lee for 60 months through approval and implementation of any of those suggestions (after recapture of an initial service fee). The contract was for a three-year term, automatically renewable absent notice by Cambridge-Lee. It also entitled National Utility to 50% of savings attributable to recommendations implemented after the contract's expiration, and required Cambridge-Lee to continue sending National Utility information and invoices covering outstanding recommendations at expiration.

In May 1995, Cambridge-Lee stopped sending its monthly utility bills to National Utility. On June 9, 1995, National Utility made an initial report to Cambridge-Lee, which included a recommendation that Cambridge-Lee could save on telecommunications costs by implementing AT&T's UniPLAN consolidated billing format. Thereafter, National Utility made nearly thirty requests between 1995 and 2001 that Cambridge-Lee resume sending its billing records and provide information relating to the status of recommendations already made by National Utility. On October 10, 1996, Cambridge-Lee's chief financial officer wrote to National Utility that Cambridge-Lee would no longer be able to send utility bills to National Utility, and that Cambridge-Lee considered the contract terminated. After the expiration of the contract's term on May 24, 1997,

Cambridge-Lee entered into an agreement with AT&T no later than August 25, 1998 to implement the UniPLAN service.

National Utility sued Cambridge-Lee for breach of contract on July 10, 2002. National Utility contended Cambridge-Lee breached by failing to submit monthly invoices for National Utility's review and analysis after National Utility made its initial recommendations. National Utility also contended it was entitled to 50% of savings Cambridge-Lee realized through implementation of the UniPLAN service for intra- and interstate telephone service. Finally, although National Utility had not made a recommendation that Cambridge-Lee implement AT&T's UniPLAN service for intraLATA (local) telephone service, it contended it would have done so before the end of the contract term, had Cambridge-Lee not breached, and that it was also entitled to 50% of savings from implementation of the UniPLAN service for local calls.

A bench trial followed. At the end of National Utility's case-in-chief, Cambridge-Lee moved to dismiss National Utility's claims as time barred. The District Court denied the motion without prejudice (reserving judgment) and invited counsel for Cambridge-Lee to re-argue the issue at the conclusion of the case. Cambridge-Lee contended it had not breached, and, alternatively, contended the statute of limitations barred National Utility's claims.

After the bench trial, the District Court again rejected Cambridge-Lee's statute of limitations argument. On three separate and independent grounds—all of which

Cambridge-Lee now contends were raised sua sponte—the District Court declared National Utility's claims were not time barred. First, the District Court found Cambridge-Lee attempted to terminate the contract prematurely through its October 10, 1996 letter. Second, it found Cambridge-Lee's failure to submit billing records to National Utility was a "continuing breach" until August 25, 2003. Third, it found Cambridge-Lee's failure to remit National Utility's 50% share of savings resulting from implementation of AT&T's UniPLAN service a "continuing breach" until August 2003. All three breaches, the court found, occurred within the six-year statute of limitations.

The District Court attributed Cambridge-Lee's implementation of AT&T's UniPLAN service to National Utility's recommendation. It inferred that, had Cambridge-Lee complied with its obligations to provide data, National Utility would have continued to recommend the UniPLAN service for long-distance calls until the expiration of the contract in May 1997. The court concluded the contract unambiguously provided for a 50% split of cost savings resulting from an implementation of a recommendation, for sixty months, whether or not the implementation occurred during the contract term or within a reasonable period of time thereafter. It found the (at most) one-year-and-three-month period between the contract's expiration and UniPLAN implementation to be reasonable, and refused to infer UniPLAN implementation was "unrelated" to National Utility's recommendation. The District Court awarded damages to National Utility of

4

$182,514.18, or one-half the proved savings (less the recaptured $12,000 service fee) plus pre-judgment interest and costs from August 25, 1998.[1] Cambridge-Lee appeals.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. In an appeal of a final judgment following a bench trial, we exercise plenary review over the District Court's conclusions of law. Findings of fact shall not be set aside unless clearly erroneous. *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (citing *Kosiba v. Merck & Co.*, 384 F.3d 58, 64 (3d Cir. 2004); Fed. R. Civ. P. 52(a)).

## II.

Cambridge-Lee presents two issues on appeal. First, error in failing to find the statute of limitations barred National Utility's claims, and, second, error in finding Cambridge-Lee's contract with AT&T was an unlawful implementation of National Utility's recommendations.

As for the statute of limitations, the District Court found National Utility's claims were not barred under a continuing breach of contract theory. In New Jersey, the statute of limitations on breach of contract claims is six years from the date of accrual. N.J. Stat. Ann. § 2A:14–1 (West 2000). New Jersey courts "have generally stated that a claim accrues, for statute of limitations purposes, on 'the date on which the right to institute and

---

[1] The District Court found National Utility had failed to sustain its burden of proof as to damages from potential recommendation of UniPLAN service for local calls.

maintain a suit' first arose." *County of Morris v. Fauver*, 153 N.J. 80, 107, 707 A.2d 958, 971 (1998) (quoting *Rosenau v. City of New Brunswick*, 51 N.J. 130, 137, 238 A.2d 169, 172 (1968)). But in the case of installment or continuous contracts, a cause of action arises for each periodic breach that occurs, absent total repudiation. *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 424, 690 A.2d 575, 589 (1997) (finding purchaser that failed most weeks to purchase the minimum amount of clams specified in a renewable one-year contract with supplier "continuously breached that contract"); *Metromedia Co. v. Hartz Mountain Assocs.*, 139 N.J. 532, 535, 655 A.2d 1379, 1381 (1995) ("In an installment contract a new cause of action arises from the date each payment is missed."); 9 Arthur L. Corbin, *Corbin on Contracts* § 956 (rev. ed. 2002) ("[C]ontracts . . . that have been said to require continuing (or continuous) performance for some specified period of time . . . are capable of a series of 'partial' breaches.").

New Jersey courts have applied the "continuing breach" standard to allow claims when the initial breach of a contract occurred outside the statutory period, but successive breaches occurred within it. *See Fauver*, 153 N.J. at 108–09, 707 A.2d at 971–72 (citing cases). The standard is typically applied in installment contracts, so that "a new cause of action arises from the date each payment is missed." *Id.* at 971. But it has also been applied where a party has continuously breached a non-payment performance obligation. *See Ballantyne House Assocs. v. City of Newark*, 269 N.J. Super. 322, 331–32, 635 A.2d 551, 555–56 (App. Div. 1993) (finding, when city of Newark failed to collect garbage

6

under tax abatement agreement with limited dividend housing corporation, that its failure "could be considered a series of continuing breaches for which plaintiffs could maintain an action for any breach occurring within six years of the filing of the complaint, even if more than six years had elapsed since Newark's initial breach"). Here, the contract unambiguously obligated Cambridge-Lee to submit its utility bills to National Utility every month during the contract term, as well as to send information and invoices on as yet unimplemented recommendations after the expiration of the contract term. Cambridge-Lee failed to submit monthly information to National Utility from May 1995 through August 25, 2003 (sixty months from implementation of the UniPLAN service). Accordingly, Cambridge-Lee was in continuing breach of contract within the six-year statute of limitations period.

Cambridge-Lee also contends its initial failure to submit monthly invoices, in May 1995, constituted a repudiation of the contract. If true, National Utility's claims might be time barred, because repudiation could operate as a "single total breach." Corbin, *supra*, § 956; *see also Metromedia*, 139 N.J. at 535, 655 A.2d at 1381 (noting that, in the case of continuing breach of an installment contract, "absent a repudiation, a plaintiff may sue for each breach only as it occurs, and the statute of limitations begins to run at that time"). But the District Court did not err in rejecting Cambridge-Lee's contention that a total breach occurred in May 1995, because Cambridge-Lee failed to establish that its actions constituted a repudiation at that time. Repudiation "entails a statement or 'voluntary

7

affirmative act' indicating that the promisor 'will commit a breach' when performance becomes due." *Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) (quoting Restatement (Second) of Contracts § 250 (1981)). In a continuous or installment contract, the first instance of a continuing breach alone is not a "total breach" unless accompanied by an anticipatory repudiation of performance due in the future. Corbin, *supra*, § 954. Accordingly, while Cambridge-Lee's continuing breach as to its obligation to submit information to National Utility might have begun in May 1995, there was no repudiation or total breach at that point, because there was no indication then that Cambridge-Lee would not fulfill its future obligations under the contract. In fact, after National Utility submitted its initial recommendations in June 1995, Cambridge-Lee told National Utility that same month that it would designate an employee to submit information to National Utility. National Utility continually requested the information thereafter.[2]

Cambridge-Lee also contends the District Court improperly raised the theory of continuing breach sua sponte in its ruling "without giving [Cambridge-Lee] the opportunity to offer a legal or factual defense," violating Cambridge-Lee's right to procedural due process. The record belies this argument. Cambridge-Lee raised the affirmative statute of limitations defense in its answer and later moved to have National

---

[2] Cambridge-Lee's October 10, 1996 letter may have constituted a repudiation and total breach, but we need not address the District Court's separate and independent holding that Cambridge-Lee breached the contract through that letter.

8

Utility's claims dismissed as time-barred. Once during National Utility's case-in-chief and again at its conclusion, the District Court informed counsel continuing breach would be an issue in any statute of limitations defense. Due process requires that parties be given a full and fair opportunity to litigate issues critical to their case. *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72, 75 (3d Cir. 1993). Cambridge-Lee had such an opportunity on the issue of continuing breach.

As for finding Cambridge-Lee's contract with AT&T was an unlawful implementation of National Utility's recommendations, the District Court did not err. The finding that National Utility would have continued to recommend UniPLAN until May 1997 if Cambridge-Lee had fulfilled its obligations was not clearly erroneous. As the District Court stated, the contract unambiguously provided that cost savings would be split between the parties, whether or not recommendations were implemented during or after the contract term. We need not decide whether there was a temporal limitation on this provision.[3] A contract whose obligations are of indefinite duration should be interpreted to require performance for a reasonable period of time. *Aboczky v. Stier*, 126

---

[3] Cambridge-Lee's reliance on *National Utility Service v. Whirlpool Corp.*, 325 F.2d 779 (2d Cir. 1963), is misplaced. The Court of Appeals there did conclude National Utility was not entitled to a percentage of savings from implementation of its recommendations by defendant at two manufacturing plants after expiration of the contract term. But as to the first plant, the holding was based on a contractual provision explicitly excluding savings resulting from an increased power factor, whether or not it had been recommended. As to the second plant, the holding was based on defendant's explicit rejection of the recommendation and the absence of any indication that it had been implemented.

N.J.L. 109, 111, 18 A.2d 262, 263 (N.J. 1941). The District Court did not err in finding the period between May 1997 and August 1998 reasonable.

III.

We will affirm the District Court's judgment.