**James I. PECK, IV**

**v.**

**Kenneth James DONOVAN, Appellant.**

**No. 12–1213.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Nov. 16, 2012.

Opinion Filed: Dec. 11, 2012.

James I. Peck, IV, West Orange, NJ, pro se.

Philip Rosenbach, Esq., Berman Rosenbach, Morristown, NJ, for Appellant.

Before: RENDELL, FUENTES and CHAGARES, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Kenneth Donovan appeals a District Court judgment entered against him on a breach of contract claim brought by Appellee, James Peck IV, an attorney who is proceeding *pro se.* Following a bench trial solely on the issue of statute of limitations, the District Court determined that Peck's breach of contract claim accrued on November 29, 2001 and that his suit was timely filed within the six-year limitations period. For the reasons explained below, we will vacate the judgment and remand the matter to the District Court for further proceedings consistent with this opinion.

I.

On August 16, 1993, Peck and Donovan executed a retainer agreement under which Peck agreed to legally represent Donovan and his company, Impact Profiles, in an ongoing federal lawsuit, *American Cyanamid Company v. Donovan* (D.N.J.Civ. No. 91–1856) ("American Cyanamid Litigation"). Under the agreement, Donovan had the option to have Peck advance the costs and expenses of the litigation with Donovan ultimately responsible for repaying all expenditures advanced regardless of the outcome of the litigation. The agreement stated: "At the

conclusion of the litigation, all such monies [for advanced costs and expenses], including principal and interest, shall be reimbursed in full by the Client to the Attorney."

The attorney-client relationship fractured in the fall of 1994 when a disagreement arose between Peck and Donovan. On May 31, 1995, a court order approved Peck's withdrawal from the representation. In the course of his representation, Peck had incurred $35,326.27 in advanced costs and expenses, which included expert witness fees.

Donovan eventually retained other counsel to represent him. On September 28, 2000, the district court entered a judgment in favor of Donovan in the American Cyanamid Litigation. That same day, the court awarded Donovan attorneys' fees and costs, but this order later was vacated on November 29, 2000. Final judgment was entered on December 15, 2000, but did not provide for attorneys' fees or costs.

The judgment entered in the American Cyanamid Litigation was then appealed, and the execution of judgment was stayed on January 31, 2001. Our Court affirmed the judgment on October 18, 2001, and American Cyanamid filed notice of its satisfaction of judgment before the district court on November 29, 2001. Peck did not receive any disbursement of the judgment proceeds.

Following his withdrawal of appearance and prior to November 29, 2001, Peck sent a few communications and submitted itemized costs and expenses to Donovan's counsel concerning reimbursement. For example, in a December 14, 2000 letter, Peck commended Donovan's attorney for prevailing before the district court and stated: "Pursuant to the retainer agreement between Mr. Donovan and me I was to be reimbursed for those payments and expenses at the conclusion of the case. That point has now arrived." Donovan's counsel submitted a bill of costs to the clerk of the district court which included Peck's advanced expenditures, although ultimately the clerk rejected those expenditures.

Neither Donovan, nor his agents, ever reimbursed Peck for the advanced costs and expenses, and on November 15, 2007, Peck filed the instant suit seeking recovery. Following pre-trial proceedings, including two summary judgment motions, the District Court presided over a two-day non-jury trial concerning solely whether the six-year statute of limitations barred Peck's breach of contract claim.

The parties agreed that the Retainer Agreement provided that the advanced litigation costs became due "[a]t the conclusion of the litigation," but disputed the meaning of "conclusion of the litigation," which was undefined by the contract. 1 App. at 8. The District Court found that the term meant the date that the District Court entered final judgment on December 15, 2000: "[F]or purposes of the Retainer Agreement, the 'conclusion of the litigation' was December 15, 2000 and it was at that point that the costs and expenses advanced by Peck came due." *Id.* at 10. However, in the District Court's estimation the Retainer Agreement merely established the "point at which Peck had the right to collect monies advanced by him on behalf of Donovan," but did not elucidate the issue of when Peck's breach of action claim accrued. *Id.* at 8.

The Court reasoned that Peck's breach of contract claim "did not accrue for statute of limitations purposes until Donovan breached the Retainer Agreement." *Id.* In determining when Donovan was in breach, the Court followed the rule that a breach of contract "occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudi-

ated or breached." *Id.* at 10 (quoting *McFarland v. Harvey,* Doc. No. A–4520–09T2, 2011 WL 1261152, at *4 (N.J.Super.Ct.App.Div. Apr. 6, 2011)).

The Court commented extensively on the conduct of the parties after the advanced costs and expenses came due. Upon examining the record, the Court determined that "there was no evidence presented to this Court that Peck had any reason to know through communications, conduct or otherwise from either Donovan or that of his appellate and trial counsel that he would not be reimbursed." *Id.* at 12. In the absence of such an indication, the Court reasoned that Peck would not have been in a position to realize that the contract had been breached. *Id.* at 11–12. The Court rejected Donovan's argument that Peck should have known that he would not be repaid earlier, and instead concluded that the date when Peck had reason to know that the agreement was breached was "after the eventual distribution of the proceeds by Greenman [Donovan's attorney] subsequent to the satisfaction of judgment entered on November 29, 2001." *Id.* at 12. The Court thus determined that Peck's breach of contract claim did not accrue until November 29, 2001 "when Peck was fully able to ascertain that Donovan would not repay him." *Id.* at 14.

The Court additionally explained that the discovery rule operated to delay the accrual date given the equitable circumstances of the case. Because Peck had "acted diligently" in requesting payment of his costs in a December 14, 2000 letter, and up until November 29, 2001 Donovan and his agents' actions and communications had indicated to Peck that he would be reimbursed, the Court concluded that "Defendant cannot now benefit from what would amount to a deceptive course of conduct and representations which prevented Peck from finding out Defendant's true intentions and filing suit earlier." *Id.* at 13–14 (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.,* 182 N.J. 210, 864 A.2d 387 (2005)).

Given that Peck's cause of action for breach of contract accrued on November 29, 2001, the Court found that Peck had timely filed his claim within the six-year limitations period and entered judgment in favor of Peck. Donovan timely filed a notice of appeal.

## II.

The District Court had jurisdiction over this action under 28 U.S.C. § 1332. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

On appeal from a bench trial, we review the district court's findings for clear error and exercise plenary review over conclusions of law and the court's "choice and interpretation of legal precepts." *Post v. St. Paul Travelers Ins. Co.,* 691 F.3d 500, 514–15 (3d Cir.2012) (quoting *Blasband v. Rales,* 971 F.2d 1034, 1040 (3d Cir.1992)). For mixed questions of fact and law for a bench trial, "we apply the clearly erroneous standard except that the District Court's choice and interpretation of legal precepts remain subject to plenary review." *Gordon v. Lewistown Hosp.,* 423 F.3d 184, 201 (3d Cir.2005).

## III.

Donovan claims that the District Court erred by concluding that Peck's cause of action for breach of contract was not time-barred because it did not accrue until November 29, 2001. According to Donovan, under a strict application of the statute of limitations, Peck's cause of action accrued almost a year earlier on December 15, 2000—the date that the District Court found was "the conclusion of the litiga-

tion."[1] Donovan also argues that the discovery rule does not postpone the accrual date.

The relevant New Jersey statute requires that breach of contract claims be brought within six years "after the cause of any such action shall have accrued." N.J. Stat. Ann. 2A:14–2. The traditional rule followed by New Jersey courts "is that a cause of action accrues on the date when 'the right to institute and maintain a suit,' first arises." *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 144 N.J. 84, 675 A.2d 1077, 1083 (1996) (citing *Rosenau v. City of New Brunswick*, 51 N.J. 130, 238 A.2d 169, 172 (1968)). The Supreme Court of New Jersey has explained that the "right to institute and maintain a suit" "refers to the 'combination of facts or events which permits maintenance of a lawsuit; the time of occurrence of the last of these requisite facts is thereby made the critical point of initial inquiry.'" *Id.* at 1083–84 (citing Note, *Developments in the Law—Statutes of Limitations*, 63 Harv. L.Rev. 1177, 1200 (1950)). The Supreme Court occasionally has ascribed the term "enforceable right" to these precepts—explaining that "ordinarily" a cause of action accrues at the time when the party seeking to bring suit has an "enforceable right." *Metromedia Co. v. Hartz Mountain Assocs.*, 139 N.J. 532, 655 A.2d 1379, 1381 (1995).

Generally under New Jersey law, a cause of action arising from a breach of contract accrues when the defendant breached the contract. *See Sodora v. Sodora*, 338 N.J.Super. 308, 768 A.2d 840, 842 (Ch.Div.2000) (acknowledging that "a strict application of [the New Jersey] statute would bar the proceedings because the written agreement was breached in 1978 when the real property was sold and the proceeds were not delivered to the plaintiffs at that time" pursuant to the terms of a property settlement agreement); *cf.* 31 *Williston on Contracts* § 79:14 (4th ed. 2004) ("[O]rdinarily, in an action based on a contract, accrual occurs as soon as there is a breach of contract....").[2] That a "right to institute and maintain a suit" would first arise in a breach of contract claim when the contract is breached is consistent with the elements of the action itself. Under New Jersey law, "[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties

1. Neither party challenged this ruling of the District Court on appeal.

2. The Supreme Court of New Jersey appears to recognize that in certain contract cases particular circumstances may warrant deviation from this general rule. For example, in *Metromedia Co. v. Hartz Mountain Assocs.* the Supreme Court followed an installment contract approach for an agreement under which the defendant-landlord had agreed to reimburse the plaintiff-tenant for monthly cleaning costs. 655 A.2d 1379. Under the terms of the contract, the landlord's duty to reimburse was contingent upon the tenant presenting the bills to the landlord, or in other words, making a demand for reimbursement. *Id.* at 1380. However, the tenant never submitted any monthly bills to the landlord for over six years. *Id.* The Court held that the tenant's cause of action arose on a monthly basis upon completion of the cleaning services, rather than after the tenant's ostensibly belated demand for reimbursement. *Id.* at 1381. Because of the "unusual circumstances of [the] case" in which the landlord's performance depended upon unclear payment procedures which included a condition precedent, *i.e.*, the tenant tendering a demand for reimbursement, the Court reasoned it was appropriate that the "enforceable right" arose upon completion of the cleaning services given that it "is a familiar method for treatment of limitation issues under installment contracts when no acceleration clause is present" and "[t]o hold otherwise would allow a claimant to trigger the statute of limitations upon presentation of a claim rather than having the existence of the claim trigger the statute of limitations." *Id.*

entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J.Super. 245, 920 A.2d 678, 689 (App.Div.2007). In an ordinary breach of contract case where the plaintiff has suffered injury, the last requisite facts to maintain such a suit will be those pertaining to the defendant's non-performance. *See, e.g.,* 31 *Williston, supra* ("[I]f the promise is to pay a debt or discharge the debtor from liability, a right of action is complete, and the statute begins to run as soon as the debt is due and unpaid."); *cf. Almor Const. Co. v. Herchet*, 10 N.J. 246, 90 A.2d 14, 16–17 (1952) ("An action at law [for breach of contract] is founded upon the mere nonperformance by the defendant. . . .").

Donovan's duty to perform under the Reimbursement Agreement was set forth as follows: "At the conclusion of the litigation, all such monies [for advanced costs and expenses], including principal and interest, shall be reimbursed in full by the Client to the Attorney." This provision explicitly provides that Donovan was obligated to reimburse Peck for the advanced costs and expenses, and that the reimbursement was due at a specific time. Accordingly, the agreement does not merely govern when Peck had the right to collect the advanced expenditures, but also provides when Donovan's performance was due. It follows that the Reimbursement Agreement provides that Donovan was to reimburse Peck for the advanced litigation costs on December 15, 2000.

When Donovan did not satisfy performance on this date, he was in immediate breach of the contract. Accordingly, under a strict application of the statute of limitations, Peck's cause of action against Donovan for breach of contract would have accrued on December 15, 2000.

The District Court's analysis, however, strays from this principle based on the discovery rule. This rule requires that "in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563, 565 (1973).

Donovan argues that the District Court's application of the discovery rule did not support delaying the accrual of Peck's cause of action. We agree. As interpreted by New Jersey courts, the discovery rule would not postpone when Peck's breach of contract claim accrued. The rule operates merely to delay accrual until the point in time when the plaintiff knew or should have known about his cause of action. "[T]he discovery rule imposes on plaintiffs an affirmative duty to use reasonable diligence to investigate a potential cause of action, and thus bars from recovery plaintiffs who had 'reason to know' of their injuries." *County of Morris v. Fauver*, 153 N.J. 80, 707 A.2d 958 (1998). "[M]ost contract actions presume that the parties to a contract know the terms of their agreement and a breach is generally obvious and detectable with any reasonable diligence." *Id.; cf. Sodora*, 768 A.2d at 842 (observing that the discovery rule could not apply to a party to an agreement "because she had knowledge of the breach" whereas third-party beneficiaries who did not discover the existence of the contract or the breach after the limitations period expired could benefit from the rule). The circumstances of this case provide no exception to this axiom. Peck knew or reasonably should have known the facts giving rise to his cause of action claim upon Donovan's immediate breach. As discussed earlier, the Reimbursement Agreement explicitly provided that Dono-

van would reimburse Peck the advanced expenditures "at the conclusion of the litigation" and Donovan never reimbursed Peck at that specified time. Accordingly, the discovery rule would not postpone the accrual of Peck's cause of action.

Notwithstanding this, however, we cannot ignore the very strong language used by the District Court in decrying Donovan's conduct leading Peck to believe that he would be paid, terming it at one point "deceptive." Thus, we do not know if the District Court would find its ruling nonetheless defensible under the doctrine of equitable tolling. This issue was not addressed in the District Court's opinion, and it is unclear from the record before us on appeal whether this argument was properly before the District Court at trial. We thus decline to consider this issue ourselves. We will vacate the District Court's judgment and remand the matter to the District Court to determine whether Peck properly advanced any alternative bases for tolling the limitations period or postponing the accrual date,[3] aside from the discovery rule, and whether any such argument is meritorious.

## IV.

We conclude both that under a strict application of the statute of limitations Peck's cause of action would accrue on December 15, 2000 and that the discovery rule would not delay the date of accrual. Nonetheless, because Peck may have raised other equitable defenses to the statute of limitations at trial, we will vacate the District Court's judgment and remand

with instructions for the District Court to proceed consistent with this opinion.

---

3.  *See, e.g., Burlington County Country Club v. Midlantic Nat. Bank South,* 223 N.J.Super. 227, 538 A.2d 441, 445 (Ch.Div.1987) (recognizing that "a statute of limitations which applies to a presently existing contractual debt or obligation may be tolled by an acknowledgment or a promise to pay" and "if such acknowledgment or promise to pay is made after the statute has run, it will act to revive the debt for the statutory period").