**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1708-22

BANK OF AMERICA, N.A.,

    Plaintiff-Respondent,

v.

THOMAS MAHER,

    Defendant-Appellant.

_____

Submitted February 27, 2024 – Decided April 12, 2024

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0054-21.

Thomas Maher, appellant pro se.

Adam J. Beedenbender (Burke Moore Law Group, LLC), attorney for respondent.

PER CURIAM

Defendant Thomas Maher appeals pro se from a January 6, 2023 Law

Division order, granting plaintiff Bank of America, N.A. summary judgment on

its breach of contract claim pursuant to a home equity line of credit secured by plaintiff's residence. Because plaintiff's complaint was filed within the six-year statutory time frame, we affirm.[1]

We summarize the pertinent facts and procedural history from the motion record in a light most favorable to defendant as the non-moving party. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). In May 2006, Countrywide Bank, N.A. extended to defendant a home equity line of credit. The agreement was secured by a mortgage on residential property located in Monmouth Beach. Effective April 27, 2009, Countrywide Bank "merged into and under the charter title of Bank of America, National Association." Pursuant to the merger, plaintiff "became the owner and holder of the [c]ontract and the [m]ortgage."

On May 17, 2006, defendant made an "initial draw" of $991,888. Thereafter, he made regular payments between June 19, 2006 and July 25, 2014, when he made his last payment, leaving a balance of $785,259.21. Section 12 of the agreement permitted plaintiff the "right[] to terminate or accelerate [defendant's] account and take other action" if defendant "fail[ed] to meet the

---

[1] Defendant also appeals from a November 4, 2022 Law Division order, denying plaintiff's initial summary judgment motion and defendant's second cross-motion to dismiss the complaint.

repayment terms of this agreement." Eight months later, on March 23, 2015, plaintiff exercised its right to accelerate the debt pursuant to the agreement. Two years later, defendant's senior mortgage lender filed a foreclosure action against the Monmouth Beach property, which was then sold at sheriff's sale.

In September 2019, plaintiff sent a notice of default to defendant. In January 2021, plaintiff filed a single-count complaint alleging breach of contract. The motion judge denied defendant's ensuing self-represented motion to dismiss the complaint but, with consent of plaintiff, vacated default. Defendant thereafter answered the complaint and asserted various affirmative defenses, including plaintiff's complaint was barred by the six-year limitations period set forth in N.J.S.A. 12A:3-118(a) and 2A:14-1.

Shortly thereafter, plaintiff moved for summary judgment and to extend the deadline to serve responses to defendant's discovery requests. Plaintiff's summary judgment motion was adjourned until discovery was complete. In November 2022, the motion judge denied plaintiff's motion, without prejudice, for failure to comply with Rule 4:46-2. The same day, the judge also denied defendant's second cross-motion to dismiss the complaint. Pertinent to this appeal, the judge found plaintiff was neither time-barred from filing the complaint nor required to provide pre-suit notice of default or acceleration.

A-1708-22

Days later, plaintiff filed its second summary judgment motion. Defendant thereafter filed his third cross-motion to dismiss. Following oral argument, the judge issued a written statement of reasons and memorializing order, granting plaintiff's motion and denying defendant's cross-motion. The judge reasoned defendant "entered into the credit agreement, received the agreed upon funds, and breached his obligation to repay the debt owed to plaintiff." The judge also concluded "[d]efendant's motion to dismiss the complaint [wa]s without support in the facts presented or the applicable law."

On appeal, defendant raises two arguments. He maintains plaintiff's cause of action was time-barred. In addition, apparently for the first time on appeal, defendant contends plaintiff's initial summary judgment motion was defective because the statement of material facts was contained within plaintiff's brief and its affiant lacked personal knowledge to authenticate certain business records.

We are unpersuaded by defendant's first argument for the reasons that follow. Because defendant's second argument was not raised before the motion judge, we could decline to address it. See Zaman v. Felton, 219 N.J. 199, 227 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009) ("[D]eclin[ing] to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available . . . .")). Nonetheless, we have

considered defendant's contentions and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We simply add the motion judge denied plaintiff's initial summary judgment motion, rendering moot defendant's belated challenges to the November 4, 2022 order.

We review the trial court's grant of summary judgment de novo. Conforti v. County of Ocean, 255 N.J. 142, 162 (2023). Employing the same standard as the trial court, we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to defendant, as the non-moving party, nonetheless entitles plaintiff to judgment as a matter of law. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Brill, 142 N.J. at 540; see also R. 4:46-2(c). We owe no deference to the trial court's legal analysis or interpretation of a statute. Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

A cause of action accrues when the right arises for the enforcing party; in installment contracts, accrual occurs when a payment is missed. Metromedia Co. v. Hartz Mountain Assocs., 139 N.J. 532, 535-36 (1995) (quoting Fed. Deposit Ins. Corp. v. Valencia Pork Store, 212 N.J. Super. 335, 338 (Law Div. 1986)). "[T]he statute of limitations [(SOL)] may begin to run against each

installment as it falls due."  Ibid. (quoting Fed. Deposit Ins. Corp., 212 N.J. Super. at 338).

Two statutes govern the SOL for contracts:  N.J.S.A. 2A:14-1 and 12A:3-118.  The six-year limitations period set forth in N.J.S.A. 2A:14-1 applies "for recovery upon a contractual claim or liability, expressed or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents, and servants."  Similarly, under the Uniform Commercial Code, "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."  N.J.S.A. 12A:3-118(a).  As plaintiff correctly notes, N.J.S.A. 12A:3-118(a) does not apply here because the parties' contract does not concern a commercial transaction in goods.  See N.J.S.A. 12A:2-10.  Instead, the six-year limitations period under N.J.S.A. 2A:14-1(a) governs the present dispute.

Further, "[u]ntil the debt [i]s due and payable, no cause of action . . . accrue[s]."  Guerin v. Cassidy, 38 N.J. Super. 454, 460 (Ch. Div. 1955); Metromedia Co., 139 N.J. at 535 ("[A] plaintiff may sue for each breach only as it occurs.").  When an acceleration clause is activated, a cause of action occurs

6

when payment is not made because the debt becomes immediately due and payable. Therefore, once the debt is accelerated, N.J.S.A. 2A:14-1(a) provides a six-year SOL.

In the present matter, the acceleration clause was activated on March 23, 2015. Because plaintiff filed its complaint on January 7, 2021, the six-year limitations period was satisfied. Pursuant to the parties' agreement, plaintiff was afforded the option to accelerate all sums payable immediately but elected to accelerate the debt eight months after defendant's last payment was received, which made the remaining balance payable immediately. The six-year SOL therefore ran from the acceleration date. See e.g., Bd. of Trs. of the Dist. 15 Machinists' Pension Fund v. Kahle Eng'g Corp., 43 F.3d 852, 857 (3d Cir. 1994) (holding the SOL will run when each installment is due, unless the acceleration clause is exercised, then the SOL runs from the day the acceleration clause is exercised on the full debt); HSBC Bank USA, N.A. v. Gold, 171 N.Y.S.3d 1029, 1030 (N.Y. App. Div. 2019) (holding "the [SOL] begins to run anew on the entire debt upon acceleration"); Blair v. EMC Mortg., LLC, 139 N.E.3d 705, 711 (Ind. 2020) (holding the SOL will run against each installment as it becomes due).

A-1708-22

Notably, in <u>In re Estate of Balk</u>, 445 N.J. Super. 395, 401 (App. Div. 2016), we held a repudiation "entails a statement or 'voluntary affirmative act' indicating that the promisor 'will commit a breach' when performance becomes due." A missed payment is categorized as a "partial breach" and not a "total breach" unless accompanied by a repudiation that is anticipatory with respect to performances due in the future. <u>Ibid.</u> Thus, "a missed payment is insufficient to constitute a total breach of an installment contract or agreement unless accompanied by anticipatory repudiation indicating a failure to perform future obligations specified in the contract." <u>Ibid.</u>

In the present matter, however, defendant stopped making payments under the agreement on March 15, 2014. There is no indication in the record defendant intended to repudiate the contract outside of missing payments. Deciding otherwise would negate any good-faith efforts to enforce grace periods provided by lenders. As <u>Corbin on Contracts</u> explains:

> Where a contract contains an acceleration clause making all installments payable in case of failure to pay any one installment when due, the creditor is not required to join subsequent installments in his action for the first installment, if the acceleration clause is regarded as giving him an option. In such case, the statute does not begin to run against later installments until each falls due in regular course. In some cases[,] the contrary has been held because of the positive wording of the acceleration clause, with nothing to

8

indicate an option. Such a holding may be unduly harsh on the plaintiff who has delayed in good-faith without harm to the debtor.

[10 <u>Corbin on Contracts</u> § 53.9 (2024).]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1708-22