13 F.3d 69
 27 Fed.R.Serv.3d 1001
 LUXLINER P.L. EXPORT, CO., a New Jersey Corporation; P.L.
Custom Body & Equipment Co., Inc., a New Jersey
Corporation; and Martin V. Smock,
v.
RDI/LUXLINER, INC., a Michigan Corporation; Luxliner Coach,
Inc., a Michigan Corporation; Recreational Designs, Inc., a
Michigan Corporation; Oyvind Haugestad; Jeffrey Showman;
Sturgis Lux-Liner Homologation, Inc.,
Sturgis Lux-Liner Homologation, Inc., Appellant.
 No. 92-5530.
 United States Court of Appeals,
Third Circuit.
 Argued May 6, 1993.
Decided Dec. 30, 1993.
 
 Lewis J. Pepperman, Craig S. Hilliard (argued), Stark & Stark, Princeton, NJ, for appellant.
 Jonathan J. Lerner (argued), Gern, Dunetz, Davison & Weinstein, Roseland, NJ, for appellees.
 Before: SLOVITER, Chief Judge, COWEN and LEWIS, Circuit Judges.
 OPINION OF THE COURT
 LEWIS, Circuit Judge.
 
 
 1
 Rule 25(c) of the Federal Rules of Civil Procedure allows a district court to join a corporation that succeeds to the interest of a party with, or substitute it for, its predecessor in a lawsuit. Acting pursuant to Rule 25(c), the district court joined a corporation on judgments entered against another corporation despite the presence of conflicting affidavits regarding whether the joined corporation was the initial judgment debtor's successor in interest. Because we hold that the district court should have conducted a hearing to determine the joined corporation's status under such circumstances, we will reverse and remand for an evidentiary hearing.
 
 I.
 
 2
 This case involves a planned joint venture which never materialized. Plaintiffs and defendants had planned to join forces to modify Ford Motor Company ("Ford") vehicles for export to Scandinavia. After plaintiffs advanced money to the defendants and began preparation themselves, defendants withdrew from the deal. Plaintiffs filed a complaint alleging various claims, including breach of contract, tortious interference with contractual relations and fraud.
 
 
 3
 One of the defendants was RDI/Luxliner, Inc. ("RDI"). In August, 1991, the district court entered a default judgment against RDI on the breach of contract claims. Because it found that there was no just reason for delay, the court directed the entry of judgment, despite the pendency of the remainder of the case. See Fed.R.Civ.P. 54(b). The parties settled and dismissed the remainder of the case.
 
 
 4
 Two months later, however, plaintiffs requested that the case be reopened because the settlement had never been consummated. They also moved, pursuant to Rule 25(c), to join or substitute another company, Sturgis Lux-Liner Homologation, Inc. ("Sturgis"), on the judgment previously entered against RDI because Sturgis had purchased RDI's assets in May, 1991, making RDI judgment-proof.
 
 
 5
 In support of the latter motion, plaintiffs filed the affidavit of Martin Smock, a plaintiff himself and the sole shareholder of one of the plaintiff corporations (the "Smock affidavit"). In response, Sturgis filed the affidavit of Jack L. Clingingsmith, its majority shareholder, sole director and sole officer (the "Clingingsmith affidavit"). Sturgis also filed a memorandum in which it requested that the court "permit [it] to test the veracity of ... statements [contained within the Smock affidavit] through further discovery and an evidentiary hearing." Reply brief, exhibit 1.
 
 
 6
 The district court reopened the case and, without conducting an evidentiary hearing, decided the Rule 25(c) motion. The court joined Sturgis on the judgments against RDI because it found that Sturgis' purchase of RDI's assets "gave rise to a de facto merger and a continuation of RDI's business." District court opinion at 5. Sturgis appeals.
 
 
 7
 The district court had jurisdiction over this case pursuant to 28 U.S.C. Sec. 1332. We exercise jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 II.
 Rule 25 provides in relevant part:
 
 8
 (c) Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.
 
 
 9
 Fed.R.Civ.P. 25(c). A "transfer of interest" in a corporate context occurs when one corporation becomes the successor to another by merger or other acquisition of the interest the original corporate party had in the lawsuit. See Froning's, Inc. v. Johnston Feed Service, Inc., 568 F.2d 108, 110 (8th Cir.1978) (assignment of claims); DeVilliers v. Atlas Corp., 360 F.2d 292, 297 (10th Cir.1966) (merger); Hazeltine Corp. v. Kirkpatrick, 165 F.2d 683, 685-86 (3d Cir.1948) (transfer of patents).
 
 
 10
 Rule 25(c) "does not require that anything be done after an interest has been transferred." See 7C Wright, Miller & Kane, Federal Civil Procedure (hereinafter "Wright & Miller") Sec. 1958 at 555 (2d ed. 1986). When a defendant corporation has merged with another corporation, for example, the case may be continued against the original defendant and the judgment will be binding on the successor even if the successor is not named in the lawsuit. See id.; see also Froning's, 568 F.2d at 110. Although substitution is usually effected during the course of litigation, substitution has been upheld even after litigation has ended as long as the transfer of interest occurred during the pendency of the case. See, e.g., Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 153-54 (6th Cir.1992) (affirming substitution in the context of proceeding to enforce a settlement agreement); Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc., 775 F.2d 38, 40 (2d Cir.1985) (affirming district court's substitution of successor corporation for original defendant after entry of judgment).
 
 
 11
 Because joinder or substitution under Rule 25(c) does not ordinarily alter the substantive rights of parties but is merely a procedural device designed to facilitate the conduct of a case, a Rule 25(c) decision is generally within the district court's discretion. Fontana v. United Bonding Ins. Co., 468 F.2d 168, 169 (3d Cir.1972). See also Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 743 (7th Cir.1985), citing 7A Wright & Miller Sec. 1958 at 664-65; National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748 F.2d 602, 610 (11th Cir.1984). To determine whether an entity is a transferee of interest so as to trigger this discretion, however, a district court's mission is one of applying law to facts. We review the district court's factual findings for clear error; its application of the law, and the manner in which it finds facts under the law, are subject to plenary review. Levendos v. Stern Entertainment, Inc., 909 F.2d 747, 749 (3d Cir.1990).
 
 
 12
 In contrast to Rule 56, regarding summary judgment, Rule 25(c) does not specify a method for deciding motions or a standard to use in determining whether motions can be decided on the papers. This gap in Rule 25(c) most likely stems from the fact that the rule does not easily lend itself to contested motions practice; it permits automatic continuation of a lawsuit against an original corporate party, although the outcome will bind the successor corporation, unless the court believes the transferee's presence would facilitate the conduct of the litigation. See Froning's, 568 F.2d at 110; 7C Wright & Miller Sec. 1958 at 557; 3B Moore, Moore's Federal Practice Sec. 25.08 at 25-58-25-63 (1993). Thus, it would appear that the drafters may not have anticipated the need to instruct courts on how to decide Rule 25(c) motions in cases in which the parties dispute whether one corporation should be substituted for or joined with another. In the absence of explicit direction, we will delineate the procedures required to accord due process to the parties.
 
 
 13
 Before a party may be deprived of a property interest, due process requires, at a minimum, notice and an opportunity to be heard. See, e.g., Mathews v. Eldridge, 424 U.S. 319, 332-33, 96 S.Ct. 893, 901-02, 47 L.Ed.2d 18 (1976); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The adversarial process "assumes that a factfinder will give the parties an adequate opportunity to be heard; if it does not, it cannot find facts reliably." In re Paoli Railroad Yard PCB Litigation, 916 F.2d 829, 854 (3d Cir.1990). See also Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 338 (5th Cir.1982) (right to a full and fair opportunity to litigate an issue is protected by the due process clause).
 
 
 14
 In this case, Sturgis' due process interests, when weighed in the context of plaintiffs' Rule 25(c) motion, are particularly compelling, for Sturgis was joined not merely in ongoing litigation but on a judgment already entered against RDI. Assuming the affidavits filed presented a genuine issue of material fact, to join Sturgis on the judgment without conducting a hearing would be to deprive Sturgis of its only opportunity to develop the operative facts before being held liable for RDI's actions. When competing sworn affidavits may result in one or more genuine issues of material fact, due process requires that a district court judge hear the evidence to assess for him or herself the credibility, or lack thereof, of one side as opposed to the other. Accordingly, we hold that where competing affidavits focus on a material issue, a district court may not decide factual issues arising in the context of Rule 25(c) motions simply by weighing the sworn affidavits against one another. Cf. Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc., 757 F.2d 1256, 1259 (Fed.Cir.1985). See also Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc., 566 F.2d 8, 16-17, 23-24 (7th Cir.1977). Instead, at least in a context such as this in which a decision on a Rule 25(c) motion effectively imposes liability, the court must first determine whether the affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to [joinder or substitution] as a matter of law." Cf. Fed.R.Civ.P. 56(c). If they do, the court should grant the motion; if they do not, however, the court should conduct an evidentiary hearing to decide whether the motion should be granted. See Fed.R.Civ.P. 43(e).[1]
 
 III.
 
 15
 We turn now to the question whether the affidavits before the district court presented any genuine issue of material fact.
 
 A.
 
 16
 The parties agree that the determination of whether Sturgis was a transferee of interest in RDI is governed by New Jersey law pertaining to corporate successor liability. See 7C Wright & Miller Sec. 1952 at 528. Under that state's law, generally, when a company sells its assets the purchasing company is not liable for the seller's debts and liabilities. McKee v. Harris-Seybold Co., 109 N.J.Super. 555, 561, 264 A.2d 98, 101 (1970).[2] Under this general rule, Sturgis would not have succeeded to RDI's potential liability in this lawsuit because it bought RDI's assets rather than officially merging or consolidating with it.
 
 
 17
 Sturgis would have succeeded to RDI's liability, however, if the asset purchase came within either of two common exceptions[3] to this general rule. First, Sturgis would be liable for RDI's debts and other liabilities if the transaction amounted to a de facto merger or consolidation of the two companies. Id., 264 A.2d at 101. Second, Sturgis would be liable if it is actually a mere continuation of RDI. Id., 264 A.2d at 101. Much the same evidence is relevant to each determination. See Atlas Tool Co., Inc. v. Commissioner, 614 F.2d 860, 871 (3d Cir.1980) (under New Jersey law, "continuity is the basis and test for both the de facto and continuity doctrines"); Menacho v. Adamson United Co., 420 F.Supp. 128, 135 (D.N.J.1976) (applying New Jersey law).
 
 
 18
 In determining whether either of these exceptions applies, the factfinder must consider whether stock was part of the purchase price for the assets; whether there was a continuity of business, control or management between the two corporations; and whether the alleged successor corporation assumed the debts of the predecessor corporation. See McKee, 109 N.J.Super. at 566-70, 264 A.2d at 104-06; see also Menacho, 420 F.Supp. at 133-35; Ramirez v. Amsted Industries, Inc., 86 N.J. 332, 342, 431 A.2d 811, 816 (1981); Wilson v. Fare Well Corp., 140 N.J.Super. 476, 485-88, 356 A.2d 458, 464 (1976) (expanding on McKee). Not all of these factors need be present for a de facto merger or continuation to have occurred. Good v. Lackawanna Leather Co., 96 N.J.Super. 439, 452, 233 A.2d 201, 208 (1967). The crucial inquiry is whether there was an "intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets." McKee, 109 N.J.Super. at 567, 264 A.2d at 104.
 
 B.
 
 19
 The following facts are undisputed and crystallize after a review of the Clingingsmith affidavit, submitted in opposition to the Rule 25(c) motion.[4] Sturgis has the same business address and telephone and telefax numbers as RDI. Its logo and name also closely resemble those of RDI. It purchased RDI's assets in May, 1991 for $90,000 plus 20,000 shares of stock, all of which was paid to the two shareholders of RDI who held security interests in RDI's equipment, tools and molds. None of the $90,000 was paid in cash; instead, Sturgis paid with two promissory notes, one for $40,000 and another for $50,000. It is unclear whether RDI continued its business thereafter, but by January, 1992, it was no longer an active entity. There is no evidence that it has ever been formally dissolved.
 
 
 20
 There was some continuity of business and management. Both companies were engaged in the conversion of Ford vehicles for export and received major contracts from Ford to modify the same types of vehicles. Further, although Clingingsmith, who had no ties to RDI, is Sturgis' chief executive (and apparently its only) officer, Oyvind Haugestad, who had been president of RDI until 1990, joined Sturgis as a key employee upon its purchase of RDI's assets.
 
 
 21
 There was also some continuity of control between the two companies. As noted previously, two of RDI's nine shareholders received stock in Sturgis. Another RDI shareholder, who also serves as the attorney for both Sturgis and RDI, owns shares in Sturgis. In addition, Haugestad, who apparently held no shares in RDI but certainly had prior ties to it, received an option to purchase 25,500 of the 74,000 issued shares of Sturgis stock when he joined Sturgis.
 
 
 22
 Sturgis did not explicitly agree to assume RDI's obligations in the aftermath of the asset purchase, and it has not paid RDI's general trade creditors. It has, however, paid certain RDI judgments and other debts which were sought from both Haugestad and RDI.
 
 
 23
 These facts, segregated from the remainder of the Clingingsmith affidavit, indicate that a de facto merger or continuation may have occurred between RDI and Sturgis, cf. McKee, 109 N.J.Super. at 566-70, 264 A.2d at 104-06, but they are not so clear that explanations Clingingsmith offered are immaterial. Depending upon the persuasiveness of the explanations proffered, some of the facts may not provide support for the conclusion that Sturgis was a successor in interest to RDI.
 
 
 24
 For example, the fact that Haugestad was both president of RDI and a management-level employee of Sturgis may or may not point to a de facto merger or continuation. In Menacho, two management-level employees were retained as a resource to the purchasing business. Although continuity of management is one factor which generally tends to suggest a merger or continuation, it did not in that case because the employees were retained to "help the new corporation learn the business upon which it was about to embark." Menacho, 420 F.Supp. at 134. See also Mitchell Machinery, Inc. v. Ford New Holland, Inc., 918 F.2d 1366, 1371 (8th Cir.1990).[5] In this case, Clingingsmith explained in his affidavit that he employed Haugestad at Sturgis to take advantage of Haugestad's experience in homologation. If this is true, Haugestad's employment at both companies may not indicate that Sturgis was a mere continuation of RDI.
 
 
 25
 Further, the mere fact that Sturgis was engaged in the same business as RDI is not dispositive.
 
 
 26
 When one company purchases all the assets of another, it is to be expected that the purchasing corporation will continue the operations of the former, but this does not by itself render the purchaser liable for the obligations of the former. For liability to attach, the purchasing corporation must represent merely a 'new hat' for the seller.
 
 
 27
 McKee, 109 N.J.Super. at 570, 264 A.2d at 106. That Sturgis operated a business at the same site as RDI, and adopted a similar name and logo and the same telephone and telefax numbers, may tend to indicate that it is merely a recent incarnation of RDI; on the other hand, Clingingsmith offers economic explanations for these similarities, the credibility of which may determine whether these facts are viewed as evidence of continuation or of merely engaging in the same business.[6]
 
 
 28
 As further evidence of continuation of business activity, plaintiffs offered, and the district court accepted as true, evidence that RDI's major contract with Ford was transferred to Sturgis after Sturgis purchased RDI's assets. See district court opinion at 4. To accept this as true, the district court had to disregard Clingingsmith's averments that the contract with Ford was not transferred directly to Sturgis but was instead awarded after an eleven-month period during which neither company worked for Ford. As we have noted, credibility is best judged after observing a person testify; to render an assessment without doing so deprives a party of a full and fair opportunity to litigate an issue and does not comport with due process. Cf. In re Paoli Railroad Yard, 916 F.2d at 841; Magill v. Gulf & Western Industries, Inc., 736 F.2d 976, 979 (4th Cir.1984); Securities and Exchange Commission v. Koracorp Industries, Inc., 575 F.2d 692, 699 (9th Cir.1978).
 
 
 29
 Finally, Sturgis' assumption and payment of some RDI debts may indicate that a merger or continuation took place, see McKee, 109 N.J.Super. at 567, 264 A.2d at 104, but this is most often the case when the purchasing corporation assumes trade debts of the seller. See generally Keller v. Clark Equipment Co., 715 F.2d 1280, 1291 (8th Cir.1983) (applying "majority view" of de facto merger test and looking for assumption of "liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations"). In this case, the record indicates that Sturgis paid certain of RDI's debts but did not assume all of its trade debts. It also contains conflicting evidence as to the significance of Sturgis' payment. On the one hand, plaintiffs claim that the debts paid were owed to entities with whom Sturgis wanted to continue doing business; on the other, Clingingsmith states that Sturgis paid the debts because Haugestad was being pursued for payment, and it wanted to retain him as an employee without his worrying about them. Indeed, the settlement agreements appended to Clingingsmith's affidavit provide that payment was conditioned upon continuity in Haugestad's employment with Sturgis. Thus, again depending upon the credibility of the explanation, this payment may be either significant or fairly innocuous. On remand, the district court will have the opportunity to resolve these conflicts after a hearing.
 
 IV.
 
 30
 In conclusion, we wish to make clear that we express no opinion concerning the final disposition of this matter. We merely hold that in circumstances such as these, where facts are disputed and the credibility of explanations for some of them is at issue, the district court should have conducted an evidentiary hearing. We will reverse and remand for further proceedings in accordance with this opinion.
 
 
 
 [1]
 At oral argument, plaintiffs contended for the first time that we are only required to decide whether the district court abused its discretion in deciding the motion without an evidentiary hearing. See Fed.Civ.P. 43(e). Having argued strenuously before the district court and in their brief that the evidence established as a matter of law that Sturgis should have been joined with or substituted for RDI, plaintiffs may not now limit the scope of the issue to one so narrow and discrete. Cf. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 215 n. 1, 216 n. 2, 105 S.Ct. 1238, 1240 n. 1, 1240 n. 2, 84 L.Ed.2d 158 (1985) (issues not raised before court previously are not properly before appellate court)
 
 
 [2]
 In Ramirez v. Amsted Industries, Inc., 86 N.J. 332, 431 A.2d 811 (1981), the New Jersey Supreme Court expanded upon the traditional McKee principles in the strict products liability context because of the special policy considerations present in strict products liability cases. It did not disturb McKee in any other context
 
 
 [3]
 There are four common exceptions to the rule of successor non-assumption of liabilities, but only two are at issue in this case. See McKee v. Harris-Seybold Co., 109 N.J.Super. 555, 561, 264 A.2d 98, 101 (1970); see also Bud Antle, Inc. v. Eastern Foods, Inc., 758 F.2d 1451, 1456 (11th Cir.1985) (noting that many courts, including the McKee court, sometimes identify a fifth exception)
 
 
 [4]
 We examine the Clingingsmith affidavit in particular because plaintiffs argue that the district court's decision is supported by it alone. See plaintiffs' brief at 14-17. Referring to the Smock affidavit as well raises a hearsay issue because almost all its averments are reiterations of statements made by Oyvind Haugestad, a former employee of both RDI and Sturgis, in April, 1992. Plaintiffs claim that these statements are not hearsay because they are statements of a party opponent, i.e., of Sturgis. Cf. Fed.R.Evid. 801(d)(2)(D). Sturgis argues that they are hearsay because it no longer employed Haugestad in April, 1992, so his statements were not made in his capacity as its employee or agent. We decline to address this issue, however, since the parties dispute whether Haugestad was employed by Sturgis in April, 1992
 Plaintiffs also argue that they need not rely on Haugestad's status as Sturgis' employee in order for his statements to be admissible. Haugestad himself is a defendant in the litigation, so, plaintiffs argue, his statements are admissible as statements of a party-opponent under Rule 801(d)(2)(A) of the Federal Rules of Evidence. Haugestad is, in fact, a defendant in the case. Whether his statements are admissible in a Rule 25(c) proceeding in which he is not one of the two parties involved, however, presents a separate issue--one which we need not decide because adding the Smock affidavit to the melange of evidence in this case only increases the number of factual disputes which bear on the Rule 25(c) issue.
 
 
 [5]
 In deciding Mitchell Machinery, the United States Court of Appeals for the Eighth Circuit applied South Dakota, rather than New Jersey, law, but "the laws pertaining to [this] issue are basically uniform throughout the country." McKee, 109 N.J.Super. at 561, 264 A.2d at 101
 
 
 [6]
 Plaintiffs argue that Clingingsmith's explanations are merely Sturgis's spin on the evidence and thus should not have been considered by the district court. When the ultimate inquiry is whether the parties to a transaction intended "to effectuate a merger or consolidation rather than a sale of assets," McKee, 109 N.J.Super. at 567, 264 A.2d at 104, however, and the facts which underlie the inquiry affect the determination of the parties' intent, one party's "spin" on those facts is indeed material