JORDAN, Circuit Judge,
concurring in part and dissenting in part.
I am fully in agreement with the majority’s analysis of the obligations SEPTA has incurred under the ADA and associated regulations by making alterations at the 15th Street Courtyard,[1] and, based on the precedential effect of those conclusions, I am strongly inclined to believe that they will compel the further conclusion that SEPTA bears the same obligations with regard to the City Hall Courtyard. I cannot join Section II.D of the opinion, however, because I believe that the City must first be made a party to this action under Federal Rule of Civil Procedure 19 before a decision regarding the City’s property can rightly be made.
*99 While SEPTA is free to begin installing an elevator at the 15th Street Courtyard, it is not free to do so at the City Hall Courtyard, which is owned by the City. As the Majority notes, SEPTA acknowledges the feasibility of installing an elevator at the City Hall Courtyard, but it does so only “so long as it [has] sufficient access to the property.” (Maj. Op. at 91.) Access to the property is essential and, to be properly granted by a court order, such access must be preceded by the City’s having a seat at the litigation table. This seems self-evident. Ordering the construction of an elevator calls for a “permanent physical invasion” of the City’s property and “eviscerates the owner’s right to exclude others from entering and using [the] property — perhaps the most fundamental of all property interests.” Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 539, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). I have searched in vain for an example of a court ordering such an invasion without the property owner being joined in the case.
Nevertheless, DIA argues, and the Majority accepts, that the District Court can afford DIA complete relief at the City Hall Courtyard, even though doing so would require SEPTA to initiate construction on the City’s land. DIA implicitly acknowledges in its brief that the City might object to bulldozers and backhoes showing up on its property, but it suggests that, if the City were to bar SEPTA from making the required alterations, SEPTA could “assert a defense of impossibility to an effort by DIA to enforce the Court’s ruling.” (Answering Brief of Appellee at 48 n.18.) However, the very fact that the Court’s ruling could result in such an “impossibility” is why the City is, by the terms of Rule 19, a “required party” in this lawsuit. See Fed. R.Civ.P. 19(a)(1) (“A person ... must be joined as a party if ... in that person’s absence, the court cannot accord complete relief among existing parties.... ”).[2]
Shifting its tack, DIA, with the Majority in tow, breezes past the City’s fundamental interest in this dispute by asserting that the City is aware of the proposal to install an elevator at the City Hall Courtyard and has no objection to it. That may well be true; indeed one hopes that the City would be eager to assist in every way possible the remedying of inaccessibility problems on its property. But we are accustomed to having property owners declare their own interests and intentions rather than having others volunteer their land for construction projects. That is why Rule 19, again by its exact terms, requires the joinder of someone who, as a practical matter, would have his ability to protect his interests impeded or impaired if not made a party. Fed.R.Civ.P. 19(a)(1)(B)©. Making the point more powerfully, the Rule goes on to say that “[i]f a person has not been joined as required, the court must order that the person be made a party.” Fed.R.Civ.P. 19(a)(2) (emphasis added). It does not say, “add that person if convenient or if you don’t already know what the person really wants.” It says, straightforwardly, that “the court must order that the person be made a party.”
In trying to understand what may be motivating the willingness to brush aside the City’s obvious interest in a construction project on City land, I am left to conclude that there is a concern over further delay in SEPTA’s beginning the already long-delayed start of installing necessary accommodations, and perhaps there is some concern that SEPTA raised the *100 issue late as a yet another strategic move for procrastination. Even if those concerns are well-founded, however, they do not dispose of the City’s rights. “A person may be added as a party at any stage of the action on motion or on the court’s initiative ... and a motion to dismiss, on the ground that a person has not been joined and justice requires that the action should not proceed in his absence, may be made as late as the trial on the merits....” Advisory Committee’s Notes on Fed.R.CivP. 19, 28 U.S.C.App., p. 134.
. Nor can the City’s interests be casually dismissed by saying, as the Majority does, that, “[although [the City] surely must be aware of DIA’s current position with respect to the necessity of an elevator in City Hall Courtyard, it has not moved to intervene, nor offered any objections which we are aware of.” (Maj. Op. at 98.) That statement implies, without record support, that the City somehow waived its rights to protect its property interests in court. The City was added as a party to this case in 2003 and settled with DIA in 2004. If anything, that history demonstrates that the City left the case only when it understood that its rights were no longer implicated. It does not demonstrate that the City should have known that its rights would be implicated once again.[3]
It is, moreover, somewhat ironic to observe that we are unaware of the City having any objection to plans for its land, since an important reason why a district court must join required parties is so that such parties have the opportunity to voice objections. See Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 72 (3d Cir.1993) (“Before a party may be deprived of a property interest, due process requires, at a minimum, notice and an opportunity to be heard.”). We approach the problem from the wrong direction when our first reaction is to say to a property owner, in effect, “you failed to intervene at the peril of your rights,” rather than saying to the litigants, “you failed to add a required party at the peril of lengthening these proceedings while that party’s rights are considered.”
DIA maintains, and the Majority agrees, that the City’s normal procedures in dealing with construction projects, such as requiring work permits, should be sufficient to protect its interests here. Once again, though, this seems a painful stretch to avoid dealing with the reality that the City is a required party. The City’s permitting procedures do not provide it with a voice in the District Court by which it can object to orders directly affecting its interest in its own land. The permitting process is, as far as I know (and this is not an issue that has been briefed), designed simply to ensure that construction in the City is completed in accordance with applicable sections of the Philadelphia Code, e.g., the City’s building code, fire code, and electrical code. Those procedures do not afford the City the opportunity to address to the *101 District Court any concerns it may have about where, when, or how an elevator will be installed on City property.
In any event, concern about significant delay is ultimately a matter of pure speculation, and an oddly contradictory bit of speculation at that. If, as DIA and the Majority assume, the City has no problem at all with the construction of the elevator on City land, then adding the City as a party should involve little or no delay at all, even as it preserves the principles of due process that are inherent in Rule 19 and which long antedate the Rules of Civil Procedure. Cf. Torrence v. Shedd, 144 U.S. 527, 532, 12 S.Ct. 726, 36 L.Ed. 528 (1892) (holding that, in a case involving interests in real property, since recovery required establishing a title that would affect other interested parties, those parties had to be joined). And if, for some reason, the City were to raise objections, the able District Court can require that those objections be dealt with on an expedited basis, as may be appropriate.
I therefore concur in the opinion of the Majority that the construction of the elevator at the 15th Street Courtyard is called for by operative federal law, but I would order the joinder of the City so that it can adequately voice its position on how that conclusion should affect its property interests in the City Hall Courtyard.

. Although the Majority’s analysis is confined to the ADA, it concludes that the same result is required by the Rehabilitation Act ("RA”). Given the close relationship between those two statutory schemes, see McDonald v. Com. of Pa., Dep’t of Public Welfare, 62 F.3d 92, 95 (3d Cir.1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.”), I do not doubt that is so, but it is not necessary to assume or decide that here.

. Being a "required party” under Rule 19 is contingent upon the party being "subject to service of process” and being a party "whose joinder will not deprive the court of subject-matter jurisdiction,” conditions which the City satisfies. Fed R.Civ.P. 19(a)(1).

. In its settlement agreement with DIA, the City acquiesced to construction of an elevator at the 15th Street Courtyard and agreed to permit construction of an elevator at Dilworth Plaza to service City Hall Station, as had “been discussed by SEPTA and the Plaintiffs in conceptual form for years.” (App. at 89-90.) But Dilworth Plaza is not the City Hall Courtyard, the location where DIA currently seeks to have an elevator installed to service City Hall Station. While the City and SEPTA have engaged in discussions regarding compliance with the District Court's order, the record does not reflect that any agreement was reached on the precise location for the installation of elevators at the City Hall Courtyard. Indeed, the Statement of Compliance that SEPTA filed with the District Court says that the “City prefers installation of elevators at locations other than those directed by the Court.” (App. at 1163.)