T.C. Memo. 2012-310

UNITED STATES TAX COURT

ALESSIO AZZARI, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 27532-08L.                    Filed November 6, 2012.

<u>Barry Allen Furman</u>, for petitioner.

<u>Carol-Lynn E. Moran</u>, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

WELLS, <u>Judge</u>:  This case is before the Court on the parties' cross-motions

for summary judgment pursuant to Rule 121.[1]  The issue we must decide is

[*]This opinion supplements <u>Alessio Azzari, Inc. v. Commissioner</u>, 136 T.C.
178 (2011).

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

[*2] whether, on remand, respondent's Appeals Office abused its discretion by rejecting petitioner's offer-in-compromise because the Appeals Office concluded that petitioner failed to include the assets of its successor corporation or by failing to provide petitioner the opportunity to amend its offer-in-compromise.

## Background

Some of the facts are set forth in our prior Opinion in Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178 (2011) (prior Opinion), and are incorporated by reference. Additionally, other facts discussed below are taken from the parties' moving papers and attachments, including the administrative record from the Appeals Office.[2] Petitioner is a New Jersey corporation with its principal place of business in New Jersey.

Petitioner failed to pay its employment tax liabilities for the quarters ending September 30 and December 31, 2005, March 31, June 30, September 30, and

---

[1](...continued)
Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The administrative record provided by respondent does not contain some of the correspondence between petitioner's counsel and the Appeals Office. Consequently, petitioner has moved to supplement the administrative record with that correspondence. Those documents are referenced in the settlement officer's case activity record, and they should have been part of the administrative record submitted by respondent. We will grant petitioner's motion and treat those exhibits as part of the administrative record.

[*3] December 31, 2006 (collectively, the periods in issue). Petitioner's unpaid employment tax liabilities for the periods in issue total $1,100,622 plus interest. Respondent filed a notice of Federal tax lien (NFTL) with respect to those liabilities, and petitioner requested a collection due process hearing.

During the collection due process hearing, petitioner requested that respondent subordinate the tax lien to a security agreement with petitioner's lender, Penn Business Credit, LLC (lender), so that petitioner could continue to use a line of credit with the lender to obtain financing secured by petitioner's accounts receivable. Respondent's Appeals Office erroneously determined that petitioner's lender already had priority and that it therefore was unnecessary to subordinate the tax lien to the lender's security interest. In part because of the Appeals Office's failure to subordinate the tax lien and in part because of delays by the Appeals Office, petitioner fell behind on its employment tax deposits. The Appeals Office subsequently rejected petitioner's request to subordinate the tax lien and enter into an installment agreement.

In our prior Opinion, we concluded that respondent's Appeals Office abused its discretion because its rejection of petitioner's request to subordinate the tax lien was based upon an error of law, i.e., the Appeals Office's erroneous conclusion that subordination was unnecessary because the lender's security

[*4] interest already had priority. Because the Appeals Office's refusal to subordinate the tax lien contributed to petitioner's failure to make its employment tax deposits, we held that it was also an abuse of discretion for the Appeals Office to refuse to consider petitioner's request for an installment agreement on that basis. Consequently, we remanded the instant case to the Appeals Office.

On remand, the Appeals Office assigned the case to Settlement Officer Robert Richards. Mr. Richards contacted petitioner and scheduled a telephone conference with petitioner for April 28, 2011. On April 26, 2011, petitioner faxed Mr. Richards a letter summarizing what had happened to petitioner's business during the past year (summary). According to petitioner's summary, because respondent refused to subordinate the tax lien to the lender's security interest, the lender refused to lend to petitioner. Petitioner also stated that, as a result, it "is hopelessly insolvent." Petitioner explained in the summary that it began to phase out its business during early 2009 and that, from that time on, petitioner did not assume any new business. Petitioner stated in its summary that the only new work petitioner has assumed since that time was work that it subcontracted to its "brother-sister corporation" Artex Construction Co., Inc. (Artex), but petitioner is now no longer taking any new business at all. In its summary, petitioner explained that Artex is a builder and contractor that has had a lending relationship with

[*5] petitioner since 1990.  During that time, petitioner subcontracted work to Artex and Artex lent petitioner money.

Petitioner explained in its summary that, after the lender ceased lending to petitioner, Artex sought a line of credit with the lender, which it received.  To increase Artex's collateral, petitioner transferred some of its accounts receivable to Artex.  Petitioner reduced its loan balance to Artex to reflect the value of the accounts receivable transferred to Artex.

In the summary, petitioner proposed that it would make an offer-in-compromise and would lease its construction equipment to Artex to generate funds to settle its tax liabilities.  During the telephone conference with Mr. Richards on April 28, 2011, petitioner did propose an offer-in-compromise.  Mr. Richards asked petitioner to submit its offer-in-compromise in writing by September 7, 2011, but gave petitioner an extension until October 11, 2011.  On October 28, 2011, the Appeals Office received petitioner's offer-in-compromise.

Petitioner's offer-in-compromise proposed to settle petitioner's outstanding tax liabilities for $166,542.  The most valuable assets petitioner listed on its Form 433-B, Collection Information Statement for Businesses, were equipment, which petitioner valued at $142,792, and vehicles, which petitioner valued at $23,750.  Those valuations represented quick sale values at substantial discounts from

[*6] appraisals of petitioner's trucks and other construction equipment, which concluded that, in total, their retail value was $555,025. Petitioner did not list any accounts receivable on its Form 433-B. In an attachment to its Form 656, Offer in Compromise, petitioner provided the following explanation of its method for estimating the value of the equipment:

> The business of Petitioner was building homes. Petitioner has a brother-sister corporation, Artex Concrete Construction Co., Inc. ("Artex"). Artex is also a builder and contractor. Petitioner owns trucks and equipment with retail values that have been appraised and attached to Form 433-B. Petitioner's President knows that the only way to dispose of the trucks and equipment would be an orderly auction. Petitioner's President is familiar with construction companies in the area which have gone out of business in the last year. Some have offered their equipment for sale to the Petitioner. The auction value is no greater than thirty (30) percent of retail. Petitioner proposes to sell the equipment to Artex and the installment payment will fund this offer.

Petitioner proposed to satisfy its offer-in-compromise by paying equal installments over the course of 60 months.

Mr. Richards asked petitioner several questions about its payment plan, and petitioner responded with a fax on November 1, 2011. In that November 1, 2011, fax, petitioner stated that it is owned and controlled by the same individuals who control Artex. It explained that Artex had recently secured $2 million in new business and had a line of credit with a lender that would permit it to purchase

[*7] petitioner's trucks and other construction equipment under an installment agreement. Petitioner proposed to use those funds to settle its tax liabilities. Petitioner has conceded that Artex was using petitioner's equipment pending its sale.

On the basis of petitioner's close relationship with Artex, Mr. Richards determined that Artex was merely a successor corporation to petitioner. In his account activity record, Mr. Richards wrote:

> It is clear a successor corp situation exist[s]. * * * The officers of Artex Inc are the same people/shareholders that controlled AAI and allowed more than $2 million dollars in payroll taxes to accrue. Artex Inc is located in the same building and uses assets that are titled to AAI. * * * If the 'Successor' corp issues did not exist the RCP [reasonable collection potential] determined by Appeals would be closer to $440K. * * * AAI established Artex Inc (different EIN) when AAI lost their line of credit. * * *

On November 17, 2011, respondent issued a supplemental notice of determination, in which Mr. Richards wrote:

> The offer in compromise is being funded by the sale of assets from Alessio Azzari, Inc. (AAI) to Artex Inc. When AAI efforts to secure a loan failed, AAI started subcontracting to Artex, Inc. AAI began to phase out its business on or about January 1, 2009 working to complete pending contracts, but did not assume any new business other than subcontracting to Artex Inc. Artex, Inc. is owned and controlled by the same officers and shareholders as AAI. Artex, Inc. was using AAI equipment to fulfill its business obligations including the $2,000,000 in new business Artex generated. Respondent has determined that Artex, Inc. is a successor corporation to AAI and is

[*8] therefore liable for AAI employment tax liabilities.  The offer in compromise is being rejected because both Artex, Inc. and AAI's assets would have to be considered in an offer in compromise.

In the alternative, Mr. Richards determined that petitioner took an excessive discount when it estimated the quick sale value of its assets.  Mr. Richards concluded that, rather than taking a 70% discount, petitioner was entitled only to a 20% discount on the quick sale value of its equipment.  Consequently, Mr. Richards rejected petitioner's offer-in-compromise.

On May 9, 2012, respondent filed a motion for summary judgment based upon the supplemental notice of determination, and, on May 10, 2012, petitioner filed a cross-motion for summary judgment.  On June 12, 2012, the parties filed responses.

## Discussion

Where the underlying tax liability is not in issue, we review the determination of the Appeals Office for abuse of discretion.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000).  In reviewing for abuse of discretion, we review the reasoning underlying the settlement officer's determination to decide whether it was arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir.

**[*9]** 2006).  Petitioner does not dispute the underlying liabilities.  Consequently, we review the determination of the Appeals Office for abuse of discretion.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials and may be granted where there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(a) and (b); Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  Because the issue we must decide in the instant case is whether, on the basis of the undisputed administrative record, the Appeals Office abused its discretion when it rejected petitioner's offer-in-compromise, we conclude that this case is ripe for summary judgment.

We first consider petitioner's contention that the Appeals Office abused its discretion when it concluded that Artex is merely a successor corporation to petitioner.  The parties agree that New Jersey State law applies.  The general rule under New Jersey law is that "'where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor'".  Ramirez v. Amsted Indus., Inc., 431 A.2d 811, 815 (N.J. 1981)

[*10] (quoting <u>Menacho v. Adamson United Co.</u>, 420 F. Supp. 128, 131 (D.N.J. 1976)).  However, New Jersey courts recognize four exceptions to the general rule of successor nonliability where (1) the purchasing corporation expressly or impliedly agrees to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.  <u>Id.</u> Because the second and third exceptions tend to overlap and much of the same evidence is relevant to each, New Jersey courts often treat them together.  <u>Woodrick v. Jack J. Burke Real Estate, Inc.</u>, 703 A.2d 306, 312 (N.J. Super. Ct. App. Div. 1997).

In determining whether a particular transaction is a de facto consolidation or mere continuation, courts consider four factors:

> (i) continuity of management, personnel, physical location, assets, and general business operations; (ii) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (iii) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (iv) continuity of ownership/shareholders.

<u>Id.</u>; <u>see also</u> <u>Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.</u>, 13 F.3d 69, 73 (3d Cir. 1993) (applying New Jersey law).  All of the factors need not be present;

**[*11]** "[t]he crucial inquiry is whether there was an 'intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets.'" Luxliner, 13 F.3d at 73 (quoting McKee v. Harris-Seybold Co., 264 A.2d 98, 104 (N.J. Super. Ct. Law Div. 1970)). "'For liability to attach, the purchasing corporation must represent merely a 'new hat' for the seller.'" Id. at 75 (quoting McKee, 264 A.2d at 106).

We must decide whether respondent abused his discretion or acted unreasonably when he applied the facts to the foregoing New Jersey authorities and determined that Artex was petitioner's successor. With respect to the first factor set forth in Luxliner and Woodrick, the record establishes that petitioner and Artex share the same management, operate out of the same address, are engaged in very similar business operations, that Artex is currently using all of petitioner's assets to conduct its business, and that petitioner transferred its accounts receivable to Artex. With respect to the second factor, petitioner is no longer actively doing any construction work. Although petitioner has not been dissolved, that fact is not dispositive, and, in any case, it would not yet have been practical to dissolve petitioner because of its ongoing litigation. The record does not contain any facts relevant to the third factor. As to the fourth factor, petitioner

[*12] and Artex have the same shareholders. Accordingly, three out of the four factors suggest that Artex should be viewed as a mere continuation of petitioner.

Moreover, the record contains sufficient evidence to infer that petitioner intended for Artex to be a mere continuation of its business under a different entity. Indeed, petitioner stated that it transferred its accounts receivable to Artex so that Artex could secure a sufficiently large credit line with the same lender petitioner had been using before the filing of respondent's NFTL. When respondent's failure to subordinate the tax lien made it impossible for petitioner to maintain a sufficient cashflow to sustain its business, petitioner appears to have successfully maintained its credit line by transferring some of its collateral from petitioner to Artex. Additionally, petitioner shifted business to Artex during that time by subcontracting its work to Artex.[3]

Petitioner contends that respondent's determination that Artex was a successor constituted an abuse of discretion because Mr. Richards wrote in his case activity record that Artex was founded only when petitioner lost its line of

---

[3]We note that petitioner's course of action seems to have minimized the harm that petitioner otherwise might have suffered from respondent's failure, on the basis of an error of law, to subordinate the tax lien to the lender's security interest (which we held, in our prior Opinion, to be an abuse of discretion). However, when petitioner transferred its collateral and business to Artex as a method to maintain its credit line, it made no attempt to pay its tax liabilities, the collection of which is in issue in the instant case.

**[\*13]** credit. Although petitioner is correct that Mr. Richards' notes contradict the facts about Artex's history in the record, Mr. Richards had sufficient other reasons upon which to base his determination that Artex was petitioner's successor. The one small error to which petitioner points does not make unreasonable Mr. Richards' determination concerning whether Artex was petitioner's successor. Accordingly, we reject petitioner's argument.

On the basis of the foregoing, we conclude that the Appeals Office did not abuse its discretion or act unreasonably when it determined that Artex was petitioner's successor corporation under New Jersey law and therefore rejected petitioner's offer-in-compromise on the basis that it failed to consider Artex's assets. Because we conclude that it was reasonable for the Appeals Office to determine that Artex was petitioner's successor, we need not consider the Appeals Office's alternative ground for rejecting petitioner's offer-in-compromise, i.e., that petitioner excessively discounted the quick sale value of its assets.

As petitioner's successor, Artex is liable for petitioner's outstanding liabilities, including its liabilities for Federal taxes, the collection of which is in issue in the instant case. See Atlas Tool Co., Inc. v. Commissioner, 70 T.C. 86, 113 (1978), aff'd, 614 F.2d 860 (3d Cir. 1980). Accordingly, the Appeals Office did not abuse its discretion or act unreasonably when it concluded that Artex was

**[\*14]** liable for petitioner's tax liabilities and that Artex's assets should have been included on petitioner's Form 433-B so that the Appeals Office could have considered those assets when it evaluated petitioner's offer-in-compromise.

Additionally, petitioner contends that it was an abuse of discretion for the Appeals Office to reject petitioner's offer-in-compromise without giving petitioner an option to amend its offer. Respondent contends that the Appeals Office was not required to permit petitioner to amend its offer-in-compromise before rejecting it because it was impossible for the Appeals Office to determine petitioner's reasonable collection potential without information regarding the value of Artex's assets.

Upon due consideration, we conclude that the instant case should be remanded to allow petitioner to include Artex's assets on its Form 433-B and revise its offer-in-compromise to accurately reflect the value of those assets and to allow respondent's Appeals Office to fully evaluate petitioner's offer. We recognize the possibility that, when the value of Artex's assets is included on petitioner's Form 433-B, the Appeals Office may conclude that petitioner is ineligible for an offer-in-compromise. However, at this point, that is mere speculation; the administrative record currently before us contains insufficient information about the value of Artex's assets.

[*15] The administrative record reveals no reason why petitioner should not have been afforded the opportunity to amend its offer-in- compromise. Although, as discussed above, respondent contends that petitioner's transfer of assets to Artex made it impossible to determine petitioner's reasonable collection potential, such a reason, standing alone, is insufficient. If the Appeals Office had provided petitioner the opportunity to amend its offer-in-compromise, petitioner could have included Artex's assets on its Form 433-B. Accordingly, we will again remand the instant case to the Appeals Office so that the Appeals Office may provide petitioner the opportunity to amend its offer-in-compromise. Petitioner will need to supplement the record by submitting a new Form 433-B that includes the value of Artex's assets.

On the basis of the foregoing, we shall partially grant respondent's motion for summary judgment insofar as we hold that Artex is a successor corporation to petitioner and that its assets should be considered in determining petitioner's reasonable collection potential, and we shall partially deny respondent's motion for summary judgment because of the failure to give petitioner the opportunity to amend its offer-in-compromise. Similarly, we shall deny petitioner's motion for summary judgment insofar as we hold that Artex was its successor corporation, and we shall deny petitioner's motion insofar as the Appeals Office failed to

**[\*16]** provide petitioner the opportunity to amend its offer-in-compromise since we are remanding the instant case to respondent's Appeals Office to give petitioner the opportunity to do so and have it considered on the remand.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.