**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0434-24

ESTATE OF MOHAMED J.
KAZAN and ABDULRAHMAN
KAZAN,

      Plaintiffs-Respondents,

v.

THE GRILL HOUSE, INC., and
MAWAFAG ABEDALLAH,
a/k/a MIKE MURTANA,

      Defendants-Appellants,

and

AHMAD KHAWATMI,

      Defendant.

_____

Submitted January 8, 2026 – Decided April 1, 2026

Before Judges Mawla, Marczyk, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0454-22.

Hegge & Confusione, LLC, attorneys for appellants (Michael Confusione, of counsel and on the briefs).

Reddin Masri, LLC, attorneys for respondents (Hisham I. Masri, of counsel and on the brief).

PER CURIAM

In this commercial landlord-tenant dispute, defendants The Grill House, Inc. (Grill House) and Mawafag Abedallah a/k/a Mike Murtana appeal from the October 10, 2024 order granting judgment of no cause in favor of plaintiffs Estate of Mohamed J. Kazan and Abdulrahman Kazan[1] (collectively, Kazan plaintiffs). Defendants also challenge the following interlocutory orders: the October 19, 2021 order directing payment of rent to plaintiffs and requiring the deposit of funds for rent and outstanding water and utility charges; the February 18, 2022 order directing the release of funds to plaintiffs and the deposit of future rent payments, taxes, and utilities; a March 25, 2022 order denying reconsideration of the February 2022 order; a January 17, 2023 order denying their motions to stay, postpone judgment, and disqualify plaintiffs' counsel; a February 6, 2023 order authorizing the execution of a warrant of removal; the

---

[1] We refer to Mohamed J. Kazan and Abdulrahman (Abdul) Kazan by their first names because they share a last name. No disrespect is intended.

2

A-0434-24

April 3, 2023 order denying their motion to vacate the judgment and dismiss plaintiffs' complaint; and the April 10, 2023 amended order. We affirm.

I.

This protracted litigation arises from a commercial lease agreement concerning property located on Main Street in Paterson (Property), which is owned by plaintiffs. Mohamed, Abdul, and Khawatmi executed a five-year lease agreement (Lease), effective December 1, 2009, for the Property to be used by Grill House as a fast-food restaurant operated by Murtana. Khawatmi agreed to pay the base rent of $72,000 for the first year with a 2% increase each year. He further agreed to pay taxes, water, sewer, and other utilities charges for the Property, all of which were considered additional rent. Around two months later, Khawatmi assigned his leasehold interest to Grill House, which agreed to be bound by all obligations under the lease. Mohamed passed away on December 25, 2009.

A. LT-5647-16

In 2016, plaintiffs filed a commercial tenancy action captioned as Estate of Mohamed Kazan v. The Grill House Inc., Docket No. LT-5647-16, alleging non-payment of rent and other charges due, totaling $62,324. A series of orders followed.

A-0434-24

After a hearing, on February 4, 2020, the court found plaintiffs had "substantially complied" with the court's order to render the property commercially habitable. The court further ordered the entire rent balance of $62,324.10 on deposit with the court, the then-outstanding rent and tax balance of $13,253.39, and the January 2020 rent payment of $7,313.96, be turned over to plaintiffs. The matter was deemed closed, and all monies deposited with the Clerk of the Court were ordered released to plaintiffs.

B.    LT-3057-20

Grill House did not comply with the court's February 4 order. In March 2020, plaintiffs initiated a second commercial tenant action against Grill House in the Special Civil Part under docket number LT-3057-20, seeking recovery for nonpayment of rent, late charges, attorney's fees, and court costs, totaling $24,549.69.

On August 30, 2021, The Grill House was directed to file a motion to transfer the matter to the Law Division under docket number L-0454-22. Subsequently, on October 19, 2021, the court granted The Grill House's motion to transfer the matter to the Law Division. It further ordered Grill House to: (1) pay directly to plaintiffs $13,253.39 for rent and taxes due through December 2019; (2) pay directly to plaintiff $22,380.69 for rent from January 1 to March

4

15, 2020; (3) deposit with the court 75% ($33,571.03) of the rent payments from July 1, 2020 to December 31, 2020; (4) deposit with the court 75% ($335.53) of the outstanding sewer utility fees; (5) deposit with the court 75% ($1,992.27) of the outstanding water utility fees; (6) deposit with the court 75% ($57,070.72) of the rent payments from January 1 to October 1, 2021; (7) pay directly to plaintiffs $8,727.84 for property taxes for tax quarters 2020-1 and 2021-2, deposit with the court $8,727.84 for property taxes for tax quarters 2021-3 and 2021-4, and deposit with the court $17,455.68 for property taxes for tax year 2021; and (8) deposit with the court 75 percent of all future rent payments, utilities, and taxes incurred after October 8, 2021.

From October 19, 2021, through February 17, 2022, Grill House failed to prosecute its counterclaims, conduct discovery, and comply with the payment obligations set forth in the court's October 19, 2021 order. In a February 18, 2022 order, the court directed $124,860.14, which had been deposited by The Grill House with the Clerk, to be released to plaintiffs. On March 25, 2022, the court denied Grill House's motion for reconsideration of the February 2022 order directing the release of the funds.

Also in March 2022, Grill House filed an answer, requested a jury trial, and asserted counterclaims for breach of implied covenants, breach of express

covenant of quiet enjoyment, breach of other express lease covenants, breach of duty of good faith and fair dealing, breach of contract, consumer fraud, tortious interference with prospective economic gain, and fraud. It contended the restaurant was not operable before, during, and after the COVID-19 pandemic because of the restrictions and as well as frequent flooding, which rendered the Property "unusable" as a restaurant. It asserted the restaurant was ineffectively repaired by plaintiffs.

Thereafter, plaintiffs amended their complaint to add Murtana and Khawatmi as defendants. They asserted claims for non-payment of rent, promissory estoppel, breach of contract, and ejectment for wrongful possession.

Defendants failed to comply with the court's order, prompting plaintiffs to file a motion to enforce litigant's rights. On November 7, 2022, the court granted a Judgment of Possession, permitting plaintiffs to apply for a warrant of removal, and transferred a portion of the litigation to the Special Civil Part. In the accompanying statement of reasons, the court explained the matter was returned to the Special Civil Part for entry of a judgement of possession and awarded plaintiffs $197,627.59, subject to adjustment for "possible erroneous assessment of late fees for periods not encompassed by prior [o]rders of th[e] court."

6

Defendants subsequently filed separate motions to stay the proceedings, postpone the judgment, reconsider an order to show cause (OTSC), and disqualify plaintiffs' counsel, Hisham I. Masri, Esq. In its order dated January 17, 2023, the court denied defendants' respective motions, but granted in part their motion for reconsideration of the November 23, 2022 order, modifying the amount due to $116,388.19. It further ordered, in the event defendants paid the sum by December 30, 2022, the judgment of possession and warrant of removal would be vacated. However, defendants failed to comply with the court's directive.

Defendants moved to vacate the judgment of possession and dismiss plaintiffs' complaint. On February 6, 2023, the court issued a Warrant of Removal. On February 8, 2023, defendants filed an OTSC with temporary restraints pursuant to Rule 4:52. The warrant was executed on February 15, 2023.

After a hearing, in the April 3, 2023 order, the court denied defendants' motion to vacate the judgment of possession and dismiss plaintiffs' complaint. In the statement of reasons, the court explained counsel's "presence ha[d] no bearing on the substantive question of whether interim court-ordered rent payments were made," even though defendants had not moved to disqualify

A-0434-24

counsel. The court noted the certification submitted by Ali Abdullah, as sole owner of Grill House, was "devoid of details, such as dates, docket numbers, and party names" and the details provided "d[id] not constitute a conflict of interest on their face." Accordingly, the court determined defendants' assertion of a conflict of interest was unavailing.

On April 10, 2023, the court amended the April 3 order to deny the OTSC. The written statement of reasons reiterated the basis for the denial of defendants' motions.

C.    Jury trial

A five-day jury trial was conducted in September 2024. Before the trial commenced, plaintiffs voluntarily dismissed their claims against defendants and the trial proceeded only on Grill House's counterclaim. Based on the filing date of the counterclaim, both parties agreed the six-year statute of limitations was March 28, 2016.

The Grill House relied solely on the testimony of Murtana, who testified the restaurant did not operate from 2016 to 2022. He stated the Paterson Health Department inspected the property on June 18, 2020, and determined it could not operate as a restaurant. Murtana also disputed plaintiffs' right to sell items from the restaurant under the Lease after plaintiffs took possession of the

Property in February 2023. On cross-examination, he admitted the business began declining in 2013 and ultimately closed in 2019.

Abdul testified, prior to 2014, no tenant complained of structural defects or water seepage at the Property. He stated structural repairs were not plaintiffs' responsibility under the Lease, and Grill House was responsible for roof repairs, property maintenance, taxes, and insurance. Abdul concluded, prior to the February 18, 2022 order releasing funds to plaintiffs, they were not required to perform any maintenance or construction work.

On re-direct examination, Murtana testified he assisted with the preparation of the tax returns, which reflected the following profit history: $167,986 in 2012; $129,524 in 2013; and a $17,241 net profit in 2014. The restaurant incurred a $244,334 loss in 2016 and a $229,004 loss in 2017. It had earned only $411 in income and incurred a $135,302 loss in 2018.

After the February 4, 2020 order, Grill House made no rent, tax, or utilities payments. Abdul acknowledged plaintiffs' attorney received a $116,388.19 check from Murtana on January 24, 2023, but it was submitted after the December 31, 2022 court-imposed deadline. Abdul later received notice from the bank Murtana issued a stop payment on the check. Prior to the eviction, Grill House did not notify Abdul it wanted the restaurant equipment. After the

judgement of possession and warrant of removal were issued, plaintiffs obtained possession of the property.

Prior to the jury charge, defendants voluntarily withdrew the fraud counterclaim, and the consumer fraud counterclaim was dismissed pursuant to Rule 4:37-2(b). On October 10, 2024, the court entered an Order for Judgment, reflecting a no cause verdict in favor of plaintiffs.

## II.

On appeal, defendants reiterate the arguments previously presented to the trial court prior to the entry of several court orders dated February 4, 2020; October 19, 2021; February 18, 2022; and January 17, 2023. Defendants now contend, however, their right to a fair trial was violated by the introduction of these court orders. They further argue the trial court committed reversible error by barring evidence regarding events that occurred before March 28, 2016; denying their motion to disqualify Masri; and failing to conduct an evidentiary hearing on what they describe as the "central issue" of the amount of rent due.

## III.

We first address defendants' argument the trial court erred in admitting five orders into evidence, thereby denying their right to a fair trial. Since

defendants did not raise this argument to the trial court, we review the issue under the Rule 2:10-2 plain error standard.

"Relief under the plain error rule, R[ule] 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). The Rule sets "a 'high bar,' requiring reversal only where the possibility of an injustice is 'real' and 'sufficient.'" State v. Alessi, 240 N.J. 501, 527 (2020) (citation omitted) (first quoting State v. Santamaria, 236 N.J. 390, 404 (2019); and then quoting State v. Macon, 57 N.J. 325, 336 (1971)). "The mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016).

Applying these principles, we conclude defendants were afforded a fair trial. The record establishes the February 2020, October 2021, and February 2022 orders were admitted into evidence with no objection from defendant. The January 2023 order and the court's statement of reasons were admitted into evidence over defendants' objection. Despite defendants' assertion to the contrary, the November 2022 order was not admitted into evidence. The orders established the amount owed by Grill House, as well as subsequent

modifications, and nonpayment, all of which were relevant to its counterclaim. Based on this record, we decline to find plain error.

IV.

We next address defendants' contention the trial court erred by barring the jury from considering events that occurred before March 28, 2016. Under N.J.S.A. 2A:14-1, the statute of limitations for a breach of contract claim "commence[s] within six years next after the cause of any such action shall have accrued." The statute of limitations begins when "the party seeking to bring the action ha[s] an enforceable right." Metromedia Co. v. Hartz Mountain Assocs., 139 N.J. 532, 535 (1995) (quoting Andreaggi v. Relis, 171 N.J. Super. 203, 235-36 (Ch. Div. 1979)) (internal quotation marks omitted). A breach of contract action accrues on "the date upon which the right to institute and maintain a suit first arises." Holmin v. TRW, Inc., 330 N.J. Super. 30, 35 (App. Div. 2000) (quoting Hartford Accident & Indem. Co. v. Baker, 208 N.J. Super. 131, 135-36 (Law Div. 1985)), aff'd, 167 N.J. 205 (2001). In other words, the right to initiate and maintain a suit for a breach of contract accrues either when the breach occurs or when plaintiffs, with the exercise of due diligence, should have discovered the breach. Sodora v. Sodora, 338 N.J. Super. 308, 312-13 (Ch. Div. 2000); see Lopez v. Swyer, 62 N.J. 267, 272-73 (1973).

12

A-0434-24

Despite defendants' untimely exchange of information regarding "profits" and "receipts", the court permitted the introduction of the evidence. However, it ruled since defendants filed their counterclaim on March 28, 2022, any claims for damages would be limited to those accrued after March 28, 2016. In effect, the court ruled any claims asserted by defendants would be limited by the statute of limitations that governs breach of contract claims, thereby precluding defendants from presenting evidence of economic losses outside of that timeframe.

We reject defendants' contention the continuing violation doctrine applies, and as such, "the statute of limitations does not begin to run until the wrongful conduct ceases." See Shepherd v. Hunterdon Dev. Ctr., 174 N.J. 1, 18 (2002) (quoting Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999)). The doctrine applies to a "discrete" discriminatory act or a "series of separate acts that collectively constitute one 'unlawful employment practice.'" Shepherd, 174 N.J. at 19-20 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)). We decline to extend the doctrine to a breach of contract claim. Defendants contend plaintiffs failure to comply with the previous November 2, 2015 order to repair water infiltration and structural roof issues, and to remediate mold infestation, was part of a continuous pattern. This is, because, at the final

13

hearing in January 2020, the court adjudicated the issue and, as reflected in the February 4, 2020 order, determined plaintiffs had substantially complied with the requirements of the order. Accordingly, Grill House's claim regarding plaintiffs' failure to repair and maintain the premises that predate March 28, 2016 was barred by the statute of limitations.

V.

Defendants contend the trial court erred by failing to disqualify plaintiffs' counsel. They assert disqualification was required pursuant to the Rules of Professional Conduct (RPC)—specifically RPC 1.7, RPC 1.9, and RPC 1.18.

We conduct a de novo review of a trial court's "determination of whether counsel should be disqualified." City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010). RPC 1.7(a) governs a motion to disqualify opposing counsel, which provides:

> Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
>
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former

14

client, or a third person or by a personal interest of the lawyer.

Having reviewed the record, we conclude the trial court did not err in denying defendants' motion. Defendants did not establish a basis for disqualification. Escobar v. Mazie, 460 N.J. Super. 520, 529 (App. Div. 2019). They did not move for Masri's disqualification until seventeen months after his appearance in the case, and they relied on the sparse certification of a non-party, which did not show a prior attorney-client relationship between Masri and any of the defendants, or as a prospective client.

We need not address the propriety or application of RPC 1.9 or RPC 1.18 to this matter. The trial court engaged in a "'painstaking analysis of the facts'" and we discern no error in its analysis. Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 205 (1988) (quoting Reardon v. Marlayne, Inc., 83 N.J. 460, 469 (1980)).

VI.

Finally, defendants argue the trial court erred in its November 23, 2022 order by directing payment to plaintiffs. We reject defendants' contention.

The court held two hearings on this issue. The first on November 7, 2022, entered a judgment and awarded plaintiffs "$197,627.59, subject to adjustment for possible erroneous assessment of late fees for periods not encompassed by

prior [o]rders of th[e] court." After the second hearing, on January 17, 2023, the court granted in part defendants' motion for reconsideration of the November 23, 2022 order, modifying the amount due to $116,388.19. Defendants also conceded they were delinquent in making the court-ordered payments to plaintiffs, and prior to the commencement of the trial, plaintiffs withdrew their claims. Our review of the record confirms the trial court neither misapprehended the facts nor misapplied the law.

To the extent we have not considered any of defendants' remaining arguments, we are satisfied they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0434-24